**Ex parte Jody Martin PARR.**

No. B–4280.

Supreme Court of Texas.

Feb. 6, 1974.

Walker, Strahan, Brunson & Watts, Larry Watts, Houston, A. J. Pope, III, Corpus Christi, for relator.

Perkins, Davis, Oden & Warburton, Kenneth Oden, Alice, John J. Pichinson, Mahoney, Shaffer, Hatch & Layton, Lee Mahoney, Spitz & Grossman, Oscar Spitz, Corpus Christi, for respondent.

STEAKLEY, Justice.

This is an original habeas corpus proceeding. The Relator is Jody Martin Parr, who was found guilty of contempt of the Court by Honorable Magus Smith, Judge presiding, and sentenced to jail for one hundred fifty days.[1] We granted Relator's petition to determine whether she was afforded the due process of law requisites of fair notice and opportunity to be heard. Ex Parte Thetford, 369 S.W.2d 924 (Tex.1963); Ex Parte Genecov, 143 Tex. 476, 186 S.W.2d 225 (1945); and Ex Parte Lipscomb, 111 Tex. 409, 239 S.W. 1101 (1922).

---

1. Vernon's Tex.Rev.Civ.Stat.Ann. art. 1911a, § 2(a) (Supp.1972):
   Sec. 2. (a) Every court other than a justice court or municipal court may punish by a fine of not more than $500, or by confinement in the county jail for not more than six months, or both, any person guilty of contempt of the court. . . .

The chain of events, as pertinent here, was as follows. On June 25, 1973, Relator filed suit for divorce from Archer Parr in the Court of Domestic Relations of Nueces County, Texas. On July 3, 1973, Archer Parr filed suit for divorce from Relator in the 229th District Court of Duval County, Texas. On August 4, 1973, the First State Bank of San Diego, Texas, filed suit in the 229th District Court of Duval County, seeking judgment against Relator and Archer Parr on an alleged promissory note in the principal sum of $125,000. Also on August 4, Honorable O. P. Carrillo, Judge of the 229th District Court, issued an order temporarily restraining Relator and Archer Parr from proceeding in their divorce suits or from interfering with any of their assets. On August 15, 1973, Judge Carrillo appointed a Receiver "to take charge of said separate and community property of the defendants Archer Parr and Jody Martin Parr." Relator has appealed this order to the Court of Civil Appeals.

On August 28, 1973, Judge Carrillo entered an additional order consolidating other suits of alleged creditors against Relator and Archer Parr. He further ordered Relator and Archer Parr "to account for and turn over to the Receiver . . . all sums of money in their possession or under their control plus all stocks, bonds, certificates of deposit, insurance policies, jewelry, paintings and all other assets that are in the possession and/or control of the said defendants Archer Parr and Jody Martin Parr immediately upon being notified to do so by said Receiver."

On October 1, 1973, the Receiver filed a contempt affidavit complaining of Relator and Bonnie M. White, Relator's sister. In brief, the affidavit alleged that Relator had refused to obey the prior orders of the Court and, among other acts, had refused to surrender possession of certain described property. It was also alleged that Relator physically assaulted and cursed the Receiver. The prayer was that Relator and her sister be cited to appear to show cause why they should not be punished for contempt, and that after hearing, each of them be punished for contempt. On October 5, 1973, Honorable Magus F. Smith, Judge presiding, issued a show cause order commanding Relator and her sister to appear in the 229th District courtroom of Duval County to show cause why they should not be found and adjudged guilty of contempt.

The hearing on the show cause order was heard by Judge Smith on October 19, 1973, at the conclusion of which he stated in open Court:

"THE COURT: Well, I think it is clear that she has been in contempt of this Court, and I think that _ _ _ of course, now, she is in contempt of Court in disposing of property after the receiver was appointed, and also in disposing of property while she was under injunction not to. . . . But I think this—she has demonstrated, by her attitude and everything else, that she does not intend to obey any orders of this Court. And to let her know that the orders of this Court are going to be obeyed as long as I am on the bench, I am going to hold her in contempt and remand her to jail for ninety days. During the meantime, she may be able to think about some of these details, who she sold the diamonds to, and a few other things."

This colloquy then occurred:

"MRS. PARR: I doubt that, your Honor.

THE COURT: So ninety days. And if you have blue jeans, Mrs. Parr, I suggest you should put them on.

MR. BECKMAN: Your Honor, on behalf of my client I would ask sincerely that the sentence be abated to give her an opportunity to purge herself of contempt.

THE COURT: What do you mean by purge herself?

MR. BECKMAN: Well, your Honor obviously the Court feels she does have

the information and is refusing to divulge it. In that case I think the proper course of procedure would be to let her know exactly what is at issue. I don't think she deserves to be locked up.

THE COURT: Now, the order is in effect that she shall turn over the assets to the receiver. This does not affect that. She is still under that order, and if she continues to refuse that, that will be another matter.

MR. BECKMAN: Well, but will the Court consider giving her an opportunity to purge herself?

THE COURT: Well, I will give her an opportunity to purge herself. How much time do you want?

MR. BECKMAN: Well, it shouldn't take a great deal of time, your Honor, to convince her that if she is able to do so she has to do it.

THE COURT: Well, I'll give her a week to get her things in shape.

MR. BECKMAN: We appreciate it, your Honor.

MR. MAHONEY: Your Honor, we will prepare an order, and furnish counsel a copy.

THE COURT: And on her failure to do so, it will be ninety days in this jail, if she doesn't purge herself by ten o'clock next Friday.

MR. BECKMAN: Very well, sir."

A court docket entry reading as follows is also shown by the record: "10–19–73 Motion for contempt heard. Mrs. Parr ordered to jail for 90 days but allowed to purge herself by disclosing certain facts within 10 days as per decree." However, neither a decree nor an order of commitment to such effect was entered.

■ It is further shown that subsequent to the October 19 hearing, Relator invoked the Federal Bankruptcy Act. In doing so, she subjected the property in her control to the exclusive jurisdiction of the Bankruptcy Court.

It is further recited in the record "that on this 31st day of October, 1973, pursuant to previous setting and notice, at a continuation of the hearing of the affidavit for contempt aforementioned, the following proceedings were had . . . ." At this time Judge Smith stated:

"THE COURT: Gentlemen, we have this morning the case of First State Bank of San Diego vs. Archer Parr, et al. This is a continuation of the contempt hearing begun on the 19th of this month. Is everyone ready in this matter? . . . I have been served with notice of the stay of proceedings and foreclosure of liens in the suit filed in the Southern District of Texas Bankruptcy Court. I have a copy of the order staying the suit, and apparently the order calls for no interference with taking possession of any property of the debtor."

Counsel for Relator then stated to the Court:

". . . the Bankruptcy Court has stayed all disposition of the petitioner's property . . . . And we have turned over, or at least made ourselves available to the Receiver in Bankruptcy, and have undertaken to try to deliver to him all the properties and assets in the name and under the control of the petitioner. That the delivery is going to be effected forthwith. Further, Mrs. Parr waives any rights she might have which would prevent her from becoming the subject of custody and control of the Receiver, and applies at this time to the Receiver that she be placed in his custody, care and control for the purpose of discovery of assets or such as he is authorized to do under the Bankruptcy Act. The motion that brings us here was made by the receiver, Davila, and that receiver, his motion is at this time stayed, so it is our position that the basis for this contempt and the committment [sic] is moot, since

Mrs. Parr is purging herself by delivering to the degree she can, to the Receiver in Bankruptcy. And further, that there are certain things which are impossible for her to deliver, but she is going to attempt to help the Receiver by placing herself in the Receiver's control."

Later in this continued hearing, counsel for Relator referred to the prior hearing of October 19, as if Relator had been found guilty of contempt, conditioned upon purgation; thereupon this colloquy occurred:

"THE COURT: That order has never been entered.

MR. WATTS: Does the Court have the one that has been entered?

· · · · · ·

THE COURT: I haven't signed any order. I held off until - · -

MR. WATTS: Then she has not been found in contempt yet?

THE COURT: She has been found in contempt, but I haven't entered the order yet.

MR. WATTS: Please the Court, I would like to ask the representative of the Bankruptcy Court if he has a statement.

MR. FRANK MONROE: I would like to make a brief statement. I don't want to interfere with these proceedings where it is not proper, but I feel it is incumbent on me to make a statement. My name is Frank Monroe, and I represent the Receiver under the Court order in the Proceedings for Arrangement of Jody Martin Parr. Our reason for being here was, first, to make sure everybody knew this was in existence, that everybody knew of the stay orders, and of Mr. Cowgill's appointment. The Bankruptcy Act, Section 311, gives the Bankruptcy Court exclusive jurisdiction of the debtor and the debtor's property. So our concern is, of course, taking possession of the debtor's property and con-

serving that property for the benefit of the creditors of the debtor. . . .

THE COURT: Let me ask you a question. I agree with you to turn everything over to them. I wash my hand of that part. But this woman is obviously in contempt of this Court on prior orders, before you ever entered the case. And your order staying does not stay any punishment I may have set for anything she did in the past . . . ."

At the conclusion of the hearing Judge Smith made the following announcement:

"THE COURT: All right, anything further? Anybody? Very well, it will be the judgment of the Court Mrs. Jody Martin Parr be held in contempt of Court, and assess her punishment at one hundred and fifty days in jail."

Counsel for Relator then inquired if there was a method of purgation whereby Relator might purge herself at that time, to which the Court replied, "I think all other avenues have been foreclosed. You have put it in Federal Court, and I can't do anything about it." The Court was then asked by counsel for Relator what would be required for Relator to purge herself, to which Judge Smith replied, "A hundred and fifty days in jail."

■■ As indicated earlier, the question is whether Relator was afforded due process in the procedure under which her punishment for contempt was assessed at one hundred fifty days in jail. We do not question the power of Judge Smith to place her in jail for ninety days or for one hundred fifty days. Nor do we have the question of whether she may be placed in such restraint for ninety days pursuant to Judge Smith's earlier announcement. An order to such effect was not entered. The commitment in question orders Relator to jail for one hundred fifty days pursuant to the only decree entered by Judge Smith. As to this, Relator is entitled to know what acts or failures subject her to punishment and to be afforded the opportunity to be

heard as to why, if guilty of contempt, she should be spared. If her conduct in asking for time to purge herself, and in then using the granted grace period to deliver her property to a Receiver in Bankruptcy, is to subject her to an additional sixty days in jail, she should have been given notice of new gravamen and exposure and be given the opportunity to be heard. In the absence of any advance word that the announced sentence of ninety days might be increased, and with no other reason for the increase being given by Judge Smith, we are entitled to conclude that the extra sentence of sixty days was caused by the conduct of Relator after October 19. If so, she has been denied due process. Cf. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), where it was held that the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be no less a violation of due process of law.

The Relator is ordered discharged.

Concurring opinion by SAM D. JOHNSON, J.

POPE, J., not sitting.

SAM D. JOHNSON, Justice (concurring).

It is beyond question that the trial court judge found the relator in contempt of court on October 19, 1973; he so announced and her punishment was set at confinement in the county jail for ninety days. It was in response to the request of the attorney for the relator that the trial court judge thereupon gave the relator one week in which to purge herself from the punishment assessed. At the subsequent hearing on October 31, 1973 the relator made no attempt to purge herself and of course did not do so.

The trial court judge was at that time empowered to enter his judgment of contempt for any period of time not in excess of ninety days. The trial court judge *increased* the punishment for contempt from ninety to 150 days, however, and it is this action, this *increase* in the punishment, without hearing or justification which the majority holds violative of due process. There *is no dissent from this* determination.

The majority opinion in the next to last paragraph states, "[n]or do we have the question of whether she may be placed in such restraint for ninety days pursuant to Judge Smith's earlier announcement. An order to such effect was not entered." The power of the trial court judge now to enter a judgment in conformity with his announced determination of October 19, 1973 is not reached by the majority. This writer is of the opinion that the trial court judge, if he so chooses, is not now inhibited from entering a judgment in conformity with his announced determination of October 19, 1973.