**Ex parte Judy Cox SWATE, Relator.**

No. 94–0460.

Supreme Court of Texas.

Argued Sept. 7, 1995.

Decided May 10, 1996.

Rehearing Overruled June 14, 1996.

---

Shawn Casey, Houston, for relator.

Cheryle R. Johnston, Houston, for respondent.

On Petition for Writ of Habeas Corpus

ENOCH, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, HECHT, CORNYN, SPECTOR, BAKER, and ABBOTT, Justices join.

GONZALEZ, Justice, filed a concurring opinion, in which OWEN, Justice, joins.

Relator Judy Cox Swate petitions this Court for writ of habeas corpus from a commitment order issued in connection with a turnover order. Because we hold that the commitment order is void, we order Relator discharged.

This case has a convoluted procedural history. . See *Ex parte Swate,* 874 S.W.2d 831 (Tex.App.—Houston [14th Dist.] 1994, orig. proceeding); *Eikenburg v. Webb,* 880 S.W.2d 781 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding). The following facts are sufficient for the purposes of the present proceeding. In 1981, the 309th District Court rendered a decree divorcing Tommy Swate (Swate) and Dian Hartwell Swate (Hartwell) based on Swate's agreement to pay child support and alimony. Swate violated the terms of the agreement and Hartwell sued him in the 309th to reduce the amount of arrearage to judgment. The case was tried before a jury and Swate, an attorney, represented himself. Based on favorable jury findings, the 309th rendered judgment in the sum of $572,284.14 plus interest for Hartwell.

Sometime after his divorce from Hartwell, Swate married Judy Cox Swate (Cox). Cox eventually filed for divorce from Swate in the 312th District Court. A little more than a month after the 309th rendered judgment for Hartwell, the 312th rendered a divorce decree dividing the marital estate of Swate and Cox. The divorce decree awarded Cox approximately $105,000 from the community property of the marriage but placed most of the funds in the registry of the court pending any appeal.

A few months later, the 309th appointed John J. Eikenburg as the receiver to take control of Swate's assets and apply them toward the satisfaction of the judgment due Hartwell. Eikenburg sought to intervene in the divorce action in the 312th, but that court dismissed the intervention with prejudice, presumably because it had already rendered final judgment and all that remained was disbursement of the funds in the court's registry to Cox. Eikenburg then filed a motion in the 309th to enforce the judgment against Swate by ordering Cox to turn over the money she received in her divorce from

Swate. After a hearing, the 309th signed an order compelling Cox to turn over any funds she received from the 312th to Eikenburg as soon as she obtained them. Subsequently, the 312th entered an order disbursing the funds in its registry to Cox, but Cox did not give Eikenburg the money.

Eikenburg filed a motion for contempt in the 309th, alleging that Cox had violated the turnover order. After a hearing, the trial court rendered a judgment of contempt against Cox, finding that she had violated the turnover order, and set her punishment at confinement in the county jail for three days and thereafter until she paid $10,000 to Eikenburg and a $500 fine to the court. The trial court then suspended the punishment provided Cox paid the fine, paid the $10,000 to Eikenburg, and made "suitable payment arrangements" to pay Eikenburg $39,671.35, representing other funds she had received from the 312th, plus $13,816 in attorney's fees.

A few months later, the 309th held a compliance hearing, after which it issued a commitment order revoking Cox's suspension because she had not complied with the contempt order. This commitment order commanded the sheriff to arrest Cox and keep her in jail not only "until she ha[d] paid the fine of $500.00 . . . and . . . ha[d] served the three (3) days imprisonment and . . . ha[d] purged herself of contempt by paying the sum of $10,000," but also until she had made "written arrangements to pay the sums of $39,671.35 and $13,816.00." The sheriff took Cox into custody. She sought habeas relief in the court of appeals, but her request was denied. 874 S.W.2d 831. Cox then sought habeas relief in this Court. We released her on bond pending our decision.

■■■ Cox argues that she is entitled to release because the commitment order increased her punishment beyond that assessed in the original contempt order, thus violating her due process rights. A commitment order may be collaterally attacked in a habeas corpus proceeding. *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex.1980). A writ of habeas corpus will issue if the commitment order is void because it deprives the relator of liberty without due process of law. *Id.;*

*Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979); *Ex parte Rhodes*, 163 Tex. 31, 352 S.W.2d 249, 250 (1961). A writ of habeas corpus will not issue if the order is merely erroneous. *Rhodes*, 352 S.W.2d at 250. Thus, we must determine whether Cox's commitment order is void or simply erroneous.

■■■ In *Ex parte Parr*, this Court held that a contemnor is entitled to know what acts or omissions will subject her to punishment. 505 S.W.2d 242, 245 (Tex.1974). She is entitled to an opportunity to explain why, if guilty of contempt, she should be spared punishment. *Id.* at 245–46. A contemnor's post-contempt conduct cannot be used to subject her to additional punishment. *Id.* at 246. If a court wishes to increase a contemnor's punishment, it must again give the contemnor notice and an opportunity to be heard. *Id.* When a contemnor's punishment is enhanced in the absence of a second notice and a second hearing, we may conclude that the contemnor was denied procedural due process. *Id.*

■■■ In its contempt order, the 309th set Cox's punishment at confinement in the county jail for three days, continuing thereafter until she paid a $500 fine to the court and $10,000 to Eikenburg. However, in its commitment order, the trial court set Cox's punishment at confinement in the county jail for three days, continuing thereafter until she paid a $500 fine to the court, $10,000 to Eikenburg, and made written arrangements to pay Eikenburg $53,487.35. By adding the "making written arrangements" feature as a prerequisite to Cox's jail release, the trial court converted what had been only a condition for Cox's suspended sentence into part of Cox's contempt sentence. Thus, the commitment order increased Cox's punishment beyond that provided in the contempt order, even though Eikenburg never requested additional relief. The record is devoid of any evidence that Cox received notice that if she did not pay Eikenburg the $10,000, she would not only spend three days in jail and remain in jail until she paid the $10,000 and the fine, but she further would be kept in jail until she

made written arrangements to pay $53,-487.35.

Because the commitment order enhanced punishment without giving Cox notice or an opportunity to be heard, she was deprived of due process. The commitment order is void. Accordingly, we grant Cox's petition for writ of habeas corpus and order her discharged and her bond released.

GONZALEZ, Justice, joined by OWEN, Justice, concurring.

I agree with the judgment and opinion of the court, but would also hold that the trial court did not have authority to issue the turnover order. Consequently, the turnover order was not enforceable by contempt. For this additional reason we must discharge Judy Cox Swate (Cox).

The source of a trial court's power to issue a turnover order and enforce it by contempt derives from the turnover statute, section 31.002 of the Texas Civil Practices and Remedies Code. The power to use contempt to enforce payment of judgments did not exist prior to enactment of the turnover statute. *See Wallace v. Briggs,* 162 Tex. 485, 348 S.W.2d 523, 526 (1961) (holding that "there is no authority for the judge to summarily order [a judgment] paid or attempt to enforce that order by contempt proceedings"). Thus, only by examining the statute can we determine the extent the Legislature gave courts the power to enforce payment of judgments by contempt.

The purpose of the turnover statute is to give courts the power to satisfy a judgment by reaching the **judgment debtor's property** that cannot be attached or levied on by ordinary legal procedures. TEX.CIV.PRAC. & REM. CODE § 31.002(a)(1). The turnover statute gives the court the power to "order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control." *Id.* § 31.002(b)(1). Thus, it is clear that the statute authorizes turnover orders enforceable by contempt only against the judgment debtor or to those who possess property subject to the control of the judgment debtor. Accordingly, we have held that the turnover statute does not authorize a court to

issue orders against those who, like Cox, are not judgment debtors or under the judgment debtor's control. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 227 (Tex.1991).

Whether a turnover order is enforceable by a contempt order directed to a stranger to the lawsuit is a serious matter that goes to the very heart of due process. A turnover order typically issues without service of citation, as was the case with Cox. A turnover order effectively shifts the burden to the judgment debtor to account for assets to satisfy a judgment. *Ex parte Johnson,* 654 S.W.2d 415, 417 (Tex.1983). A turnover order that issues against a non-party for property not subject to the control of the judgment debtor completely bypasses our system of affording due process. Otherwise, a court could simply order anyone (a bank, an insurance company, or the like) alleged to owe money to a judgment debtor to hand over cash on threat of imprisonment.

A number of other courts have also concluded that a turnover order is not a shortcut to bypass proceedings that afford third parties due process. They have come to the conclusion that the turnover statute is a purely procedural mechanism to aid in collecting judgment, but does not provide a substitute for other proceedings to adjudicate the substantive rights of third parties. *See, e.g., Cross, Kieschnick & Co. v. Johnston,* 892 S.W.2d 435, 439 (Tex.App.—San Antonio 1994, no writ) (reversing judgment rendered against partners when underlying judgment involved corporation, holding that it was improper as matter of law to issue order against non-judgment debtor); *Republic Ins. Co. v. Millard,* 825 S.W.2d 780, 783 (Tex. App.—Houston [14th Dist.] 1992, orig. proceeding) (issuing mandamus on grounds that trial court abused its discretion by including debtor's insurance company in turnover order when creditors sought title to debtor's cause of action against insured); *Cravens, Dargan & Co. v. Peyton L. Travers Co.,* 770 S.W.2d 573, 576–77 (Tex.App.—Houston [1st Dist.] 1989, writ denied) (finding that turnover statute could not be used as procedural tool against State Board of Insurance to reach debtor's financial-responsibility deposit with that agency); *United Bank Metro v.*

*Plains Overseas Group, Inc.,* 670 S.W.2d 281, 284 (Tex.App.—Houston [1st Dist.] 1983, no writ) (determining that creditor who obtained judgment against individual was not entitled to turnover order against corporation until creditor successfully pierced corporate veil in separate proceeding); *Steenland v. Texas Commerce Bank Nat'l Ass'n,* 648 S.W.2d 387, 390–91 (Tex.App.—Tyler 1983, writ ref'd n.r.e.) (concluding that turnover statute does not authorize appointment of receiver to sell homestead to obtain its non-exempt excess value until substantive issues are established in separate proceeding brought for that purpose).

A turnover order is not a substitute for established remedies allowing a creditor to reach property owned by the judgment debtor claimed to be in the possession of a stranger to the lawsuit. A creditor may seek garnishment against third parties or join them in a suit against the debtor and, if successful, obtain a turnover order against the third party. However, a creditor may not seek a turnover order against third parties without other initial proceedings.

A challenge by habeas corpus is a collateral attack on the contempt judgment, which generally will be unsuccessful if the court has jurisdiction over the parties and the subject matter. *Johnson,* 654 S.W.2d at 419. However, a court may have jurisdiction over the general subject matter, yet lack the power to render a particular judgment or order in the case. *Austin Indep. Sch. Dist. v. Sierra Club,* 495 S.W.2d 878, 881 (Tex.1973). Such situations occur "only where the error is quite serious and strikes at the very power of the court to render the judgment." *Id.* at 882. In my view, the defect in the trial court's turnover order is more than a mere error in the manner it exercises turnover jurisdiction. Rather, it goes to the very authority of the court to issue a turnover order in the first place. There are some actions that are so beyond the power of a court that they are not enforceable by contempt even though the court otherwise has jurisdiction over the case. For example, in *Ex parte Hall,* 854 S.W.2d 656 (Tex.1993), the husband contractually agreed to pay temporary spousal and child support, which was incorporated into an order. He petitioned for writ of habeas corpus after he was held in contempt for failure to pay the arrearage. We first observed in *Hall* that a person may not be imprisoned for debt under article I, section 18 of the Texas Constitution and that the contractual obligation to provide support above and beyond that required under the Family Code is a debt. *Id.* at 658. The temporary support order was issued solely on the contractual agreement. We held that the order of contempt was not authorized by statute and therefore was not enforceable by contempt. *Id.* at 659. Thus *Hall* demonstrates that a court may have general subject-matter jurisdiction to issue an order yet lack the authority to enforce it by contempt. *See also Wallace,* 348 S.W.2d at 525–27 (holding that a court order to pay attorney fees in advance of trial was subject to collateral attack by mandamus because the order was beyond the power of the trial court to issue).

A court does not have the power to haul a citizen into court and order her to jail until she confesses judgment and empties her purse. It may not be as efficient to require the plaintiff to plead and prove why she has a right to a person's money; however, our system of jurisprudence demands it. I would order Cox discharged because the trial court did not have the authority to issue the turnover order, and therefore could not enforce it by contempt.