NUMBER 13-00-575-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


IN RE: CHARLES T. PATILLO


___________________________________________________________________


On Petition for Habeas Corpus


___________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Dorsey and

Rodriguez

Opinion by Justice Dorsey



 Since his divorce from Stephanie McCullough in 1990, Charles
Patillo has accumulated well over $43,000.00 in child support arrears
for the support of their two daughters. He was ordered to pay the
amount of $700.00 per month by the 117th District Court of Nueces
County. Following a lengthy series of legal proceedings, Patillo was
incarcerated for various violations of the court's orders relating to
payment of child support. His confinement commenced on July 6,
2000. He was sentenced to be confined for a period of ninety days and
to remain confined thereafter until he paid certain amounts. Patillo
seeks issuance of a writ of habeas corpus.

 Although Patillo has provided this Court with numerous legal
documents emanating from the lengthy legal history of his ex-wife's
attempts to collect child support from him, our discussion is limited to
the two orders that directly bear upon the issues raised in this habeas
corpus proceeding. Those are the Contempt Order, signed on June 11,
1999, and the Commitment Order, signed on September 7, 2000. The
law is well settled that due process requires a court, before imprisoning
a person for violating an earlier order, to sign both a written judgment
or order of contempt and a written commitment order. Ex parte
Shaklee, 939 S.W.2d 144, 145 (Tex. 1997). The contempt order must
clearly state in what respect the court's earlier order has been violated
and must clearly specify the punishment imposed by the court. Id. A
commitment order is the warrant, process, or order by which a court
directs a ministerial officer to take custody of a person. Ex parte
Hernandez, 827 S.W.2d 858 (Tex. 1992). The form of a commitment
order is not important, but the substance of one is. Id.

 This case has become convoluted due to the numerous times the
parties appeared in court to resolve this matter, resulting in numerous
motions for enforcement, contempt orders, contempt sentences and
commitment orders. For the sake of clarity, we only mention the
relevant portions of each order.

The Contempt Order


 The Contempt Order was signed by the trial court on June 11,
1999. That Order was the result of a hearing held a few months before
the Order was signed. At that hearing, both Charles and Stephanie
appeared with counsel, and agreed to the terms contained in the
Contempt Order. Charles was found to be in contempt for failing to
make twenty-nine child support payments of $350.00 each. The court
found that he was able to pay those amounts. The court also found
that he failed to pay uninsured medical expenses totaling $1,021.78.

 The Order also contained a confirmation of all child support arrears
to date. The total amount was $44,081.29. The court also assessed
attorney's fees and costs against Patillo in that order.

 The Order also contained a criminal contempt and a civil contempt
sentence for the violations. The criminal sentence required Patillo to
serve ninety days for each violation. The civil sentence required him to
remain incarcerated until he made the following payments:

 (1) $44,081.29 for the entire amount of child support arrearage;

 (2) $1,021.78 for uninsured medical expenses;

 (3) $298.58 for costs; and

 (4) $3,000.00 for attorney's fees.

 Finally, the Order suspended execution of his jail sentences on the
condition that he make timely child support payments, as previously
ordered, for the next three months. The court scheduled a compliance
hearing for three months later to determine whether he had, indeed,
made those payments.

 We find that certain portions of that Order are void. This Court
will issue a writ 

of habeas corpus if the contempt order is void because it deprives the
relator of liberty without due process of law or because it was beyond
the power of the court to issue. Ex parte Swate, 922 S.W.2d 122, 124
(Tex. 1996); Ex parte Barnett, 600 S.W.2d 252, 254 (Tex. 1980). A
judgment is void if it is apparent that the court rendering the judgment
had no jurisdiction over the parties, no jurisdiction over the subject
matter, no jurisdiction to render the judgment, or no capacity to act as
a court. In re Weise, 1 S.W.3d 246, 250 (Tex. App.--Corpus Christi
1999, orig. proceeding). However, the void provisions of that order do
not make the entire order void because the sentences are listed
separately and capable of being severed from the valid portions of the
order. Where a trial court lists each failure to comply with an order
separately and assesses a separate punishment for each failure to
comply, only the invalid portion of the contempt order is void and the
remainder of the contempt order is enforceable.(1) 

 We find no infirmity in the provisions of the Order assessing ninety
days incarceration for criminal contempt. Patillo was found in contempt
for twenty-nine separate failures to pay child support and for failing to
pay uninsured medical expenses as required by the divorce decree. He
was sentenced to ninety days for each separate violation, to be served
concurrently. That sentence is valid.

 However, the sentence contained in the Order for civil contempt
contains some problems. First, the amount of child support arrearage
is incorrect. Patillo may only be confined until he pays the amount of
arrearage he was actually held in contempt for failing to pay, which
totaled $10,150.00. Accordingly, we reform the Contempt Order to
reflect that amount. Similarly, Patillo was not actually held in contempt
for failing to pay costs and attorney's fees, but was merely ordered to
pay them in the Contempt Order. Thus, we strike the portions of the
Order requiring him to remain incarcerated until he pays those amounts.

 After striking the void provisions, the Contempt Order is reformed
to hold Patillo in contempt for failing to pay twenty-nine child support
payments, $10,150.00, and for failing to pay $1,021.78 in uninsured
medical expenses. It sentences him to ninety days in jail, and to remain
in jail until he pays $10,150.00 in child support arrears and $1,021.78
in uninsured medical expenses.

The Commitment Order


 Although his attorney appeared and stated to the court that Patillo
received notice of the hearing, Patillo did not appear at the compliance
hearing scheduled in the Contempt Order. Accordingly, after a capias
was issued for his arrest, Patillo was again brought before the court. 
The court revoked the suspension of his sentence under the Contempt
Order. The court issued a new order which committed Patillo to jail. 
We refer to this order as the Commitment Order.

 The Commitment Order contained findings that Patillo failed to pay
his child support payments due in May and June of 1999 although he
had the ability to pay them. Those were the payments that suspension
of his sentence was conditioned upon. The Commitment Order also
committed Patillo to the custody of the sheriff and sentenced him to
ninety days confinement and to remain confined until he pays:

 (1) the child support payments that he failed to pay
in May and June of 1999;


 (2) $44,081.29 for child support arrears, reduced by
certain payments made on his behalf by the IRS
Intercept;


 (3) $1,021.78, for uninsured medical expenses;


 (4) $298.58 for costs; and


 (5) $3,000.00 for attorney's fees.(2)


 We have already held that the terms requiring Patillo to be
confined until he pays costs and attorney's fees are invalid because he
has not been held in contempt for failing to pay those amounts. 
Accordingly, we strike that portion of the Commitment Order to conform
with the Contempt Order.

 Likewise, we reform the amount of arrearage to conform with the
amount reflected in the modified Contempt Order. The proper amount
of arrears is $10,150.00. Additionally, we strike the portion of the
Commitment Order relating to the credits for payments made by the
IRS. Those credits should be applied to the entire amount of arrearage,
and not to the amount that Patillo was held in contempt for failing to
pay.

 Finally, we strike the term of the Commitment Order requiring
Patillo to remain incarcerated until he pays the payments that were due
in May and June of 1999. Again, Patillo was not found in contempt for
failing to pay those payments, but suspension of his prior contempt
sentence was conditioned upon his making those payments. Therefore,
that term of the Commitment Order impermissibly imposes a greater
sentence than was imposed in the Contempt Order. Swate, 922
S.W.2d at 124. A contemnor's post-contempt conduct cannot be used
to subject him to additional punishment. Id.

 After striking the appropriate portions, we are left with a
Commitment Order that conforms exactly with the Contempt Order. 
Accordingly, the Commitment Order is reformed to read that Patillo
should be held for ninety days, and thereafter until he pays $10,150.00
in child support arrears and $1,021.78 for uninsured medical expenses. 
We deny his request for habeas corpus relief, but reform the Contempt
and Commitment Orders to reflect the appropriate amount of child
support arrearage and to strike the void provisions. See Balderas, 804
S.W.2d at 264 (where, in habeas corpus proceeding, court of appeals
reformed commitment order to reflect a 10-day sentence in place of a
175-day sentence). We find no merit in Patillo's remaining challenges
to the validity of the orders.(3)


 ______________________________

 J. BONNER DORSEY,

 Justice


Publish
.

Tex. R. App. P. 47.3(b).


Opinion delivered and filed

this 9th day of November, 2000.

1. See Ex parte Hudson, 917 S.W.2d 24, 26­27 (Tex. 1996); Ex parte
Carey, 704 S.W.2d 13, 14 (Tex. 1986); Ex parte Ramzy, 424 S.W.2d
220, 225-26 (Tex. 1968); In re Aarons, 10 S.W.3d 833, 834 (Tex.
App.--Beaumont 2000, orig. proceeding); Ex parte Arnold, 926 S.W.2d
622, 625 (Tex. App.--Beaumont 1996, orig. proceeding); Ex parte
Balderas, 804 S.W.2d 261, 264 (Tex. App.--Houston [1st Dist.] 1991,
orig. proceeding); Ex parte Linder, 783 S.W.2d 754, 758 (Tex.
App.--Dallas 1990, orig. proceeding); Ex parte Myrick, 474 S.W.2d 767,
771 (Tex. Civ. App.--Houston [1st Dist.] 1971, orig. proceeding). 
2. Actually, the Commitment Order was clarified on Motion for New
Trial. We read the two Orders together for purposes of this opinion.
3. Patillo has also asserted that he is unable to pay the amounts
ordered and that he failed to receive notice of a critical hearing. 
However, we have found no evidence in the record to support either
contention, and refuse to grant relief on either basis.