# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00781-CV

---

### WC 4th and Colorado, LP, Appellant

### v.

### Colorado Third Street, LLC, Appellee

---

**FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-20-004259
THE HONORABLE AURORA MARTINEZ JONES, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

WC 4th and Colorado, LP (WC 4th) appeals from three orders rendered by the trial court in this suit involving competing claims of an alleged promissory-note default and wrongful foreclosure on real property. The challenged orders granted the following "joint" motions of the parties, agreed to purportedly on WC 4th's behalf by a receiver appointed for an affiliated third party in an unrelated lawsuit: (1) joint motion to release funds, (2) joint motion to dismiss certain claims with prejudice, and (3) joint motion to sever. Because we hold that, on this record, the receiver exceeded his authority, we reverse the challenged orders and remand this cause for further proceedings.

## BACKGROUND

Austin real estate developer Nate Paul does business through a network of entities, some of which have "WC" or "World Class" in the name. *See WC 1st & Trinity, LP v.*

*Roy F. & JoAnn Cole Mitte Found.*, Nos. 03-19-00799-CV, 03-19-00905-CV, 2021 WL 4465995, at \*1 (Tex. App.—Austin Sept. 30, 2021, pet. denied) (mem. op.). Paul is the sole manager and member of World Class Capital Group, LLC (World Class), and he, World Class, and World Class's affiliate companies are the subject of litigation throughout the state. In one of those cases (the Princeton Lawsuit), World Class and Great Value Storage, LLC were ordered to pay a $9.7 million judgment for breach of a promissory note. *See Great Value Storage, LLC v. Princeton Cap. Corp.*, No. 01-21-00284-CV, 2023 WL 3010773, at \*6 (Tex. App.—Houston [1st Dist.] Apr. 20, 2023), pet. granted, judgm't vacated w.r.m. As part of that litigation, a Harris County district court appointed attorney Seth Kretzer as receiver to collect on that judgment. *See id.*

The resolution of this case turns on whether Kretzer acted beyond the scope of his authority by settling this lawsuit between a creditor—appellee Colorado Third Street, LLC (Colorado Third)—and a different Paul-related business, appellant WC 4th. This suit concerns a promissory note securing real property (Property) in downtown Austin. It originated when the noteholder, Colorado Third, sued the guarantors of the note due to the borrower's alleged default. The guarantors are Paul and World Class.[1] The borrower on the note and Property owner, WC 4th, intervened in this suit and asserted a claim against Colorado Third for wrongful foreclosure.

Kretzer was appointed receiver in the Princeton Lawsuit while this lawsuit was pending. *See* Tex. Civ. Prac. & Rem. Code § 31.002 (titled "Collection of Judgment Through Court Proceeding," allowing "court of appropriate jurisdiction," among other measures, to appoint receiver to "take possession of the nonexempt property" of debtor to satisfy judgment).

---

[1] Neither Paul nor World Class is a party to this appeal.

Among the provisions in the Princeton Lawsuit's September 9, 2021 receivership order, rendered "pursuant to the Texas Turnover Statute," *see id.*, are the following:

- Kretzer has the "power and authority to take possession of and sell all leviable property of Judgment Debtors," including all financial accounts, securities, real property, cash, negotiable instruments, contract rights, and "causes of action or choses of action," and hold such property "in custodia legis";

- Judgment Debtors are ordered to "turnover" to Kretzer within ten days all checks, cash, promissory notes, documents of title, securities, and contracts owned by [them] or in their respective names;

- Judgment Debtors are ordered to "identify and turn over" to Kretzer all interests in "any business or venture, including limited liability companies and limited partnerships" as well as "all agreements, stock certificates and other documents pertaining to the Judgment Debtors' [respective] ownership in the business or venture"; and

- Kretzer is authorized to "seize the membership interest of any Limited Liability Company in which [either Judgment Debtor] is a member" and to "sell, manage, and operate the Limited Liability Company as" he deems appropriate.

About a week after being appointed receiver in the Princeton Lawsuit, Kretzer entered an appearance in this lawsuit, stating that he was "appear[ing] as counsel of record" for World Class and "its subsidiary" WC 4th and was "hereby replac[ing] prior counsel of record for" World Class and WC 4th. The same day, Colorado Third and Kretzer—as "attorney" for World Class and WC 4th—filed a "Joint Motion to Release Funds." In that motion, Kretzer and Colorado Third represented that WC 4th had filed for bankruptcy in August 2020 and that about a year later the bankruptcy court had dismissed WC 4th's bankruptcy case. They further stated that in its dismissal order, the bankruptcy court ordered WC 4th to "turn over all funds in its accounts" to Colorado Third's legal counsel for retention in its trust account until removal from the account was ordered by the court in which the wrongful-foreclosure action was pending. WC 4th complied with the order, transferring almost $1M to the trust account. Kretzer and

3

Colorado Third further represented in the motion to release funds that "the Parties resolved all claims asserted in this case, as between themselves," and that pursuant to their settlement the trust accountholder should "release all funds" therein to Colorado Third, requesting the court to "issue an order" accordingly. The trial court granted the motion to release funds on December 8, 2021, without a hearing.

On March 18, 2022, Kretzer and Colorado Third filed an "Agreed Joint Partial Motion to Dismiss Certain Claims with Prejudice," representing that the parties had "resolved certain claims asserted in this case including all of" WC 4th's claims against Colorado Third and all of Colorado Third's claims against World Class and that the "only remaining claims in this case will be the claims asserted by and between" Colorado Third and Paul. Three days later, without a hearing, the trial court rendered its "Agreed Order Granting Joint Partial Motion to Dismiss Certain Claims with Prejudice."

On April 18, 2022, WC 4th filed a combined "Motion to Vacate Agreed Order," "Sworn Motion to Show Authority of [Kretzer and his law firm] to Represent" it, *see* Tex. R. Civ. P. 12, and "Motion to Vacate [Kretzer's] Actions for Lack of Standing or Capacity." Therein WC 4th argued that Kretzer had no authority to represent it or make decisions on its behalf in this lawsuit, including hiring his law firm as WC 4th's "self-proclaimed" attorneys; entering a notice of appearance; filing pleadings, motions, and agreed orders; and entering into settlement agreements. Kretzer filed a response to the motion, attaching evidence purportedly demonstrating his authority. The evidence included a copy of the receivership order, entity-formation documents filed with the Secretary of State by WC 4th and other World Class affiliates, the deed of trust and related loan-transaction documents for the Property, and the company agreement for third party World Class Real Estate, LLC (the LLC)—the general

4

partner of WC 4th. Colorado Third filed a joinder in Kretzer's response. The trial court conducted a hearing on WC 4th's motion June 21, 2022, but the record does not contain an express ruling on the motion.

On August 12, 2022, Kretzer and Colorado Third filed a "Joint Motion to Sever," asking the court to render an agreed order severing the claims previously dismissed pursuant to the Agreed Order Granting Joint Partial Motion to Dismiss Certain Claims with Prejudice so that the dismissal order would "become a final, appealable judgment." WC 4th filed a response to the motion to sever, reasserting its arguments about Kretzer's lack of authority, and after a September 16, 2022 hearing, the trial court granted the motion to sever. WC 4th filed a timely motion for new trial, in which it again objected to Kretzer's authority to act in its stead. After the trial court denied the motion for new trial, WC 4th perfected this appeal.

## DISCUSSION

In its two appellate issues, WC 4th challenges Kretzer's authority to act on its behalf, specifically to represent it in this litigation and file purportedly "joint" motions that resulted in the dismissal with prejudice of its claims. Colorado Third contends that WC 4th did not preserve its challenge to Kretzer's authority.[2] *See* Tex. R. App. P. 33.1 (error-preservation

---

[2] Colorado Third also contends that WC 4th's appeal is an impermissible "collateral attack" on the receivership order and the First Court of Appeals's judgment affirming the order. *See Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005) (defining collateral attack as "an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against."); *see also Great Value Storage, LLC v. Princeton Cap. Corp.*, No. 01-21-00284-CV, 2023 WL 3010773, at *1 (Tex. App.—Houston [1st Dist.] Apr. 20, 2023, pet. granted, judgm't vacated w.r.m.) (mem. op.) (affirming order appointing receiver). However, we need not address such argument in detail, as we find persuasive our sister court's thorough analysis and determination in a similar case involving related parties in similar circumstances that a party's challenge to a receiver's attempts to enforce a receivership

5

rule). We therefore first consider whether WC 4th preserved its complaint as to Kretzer's authority. If so, we then consider whether legally sufficient evidence supports the trial court's implied finding that Kretzer in fact had the authority to act in WC 4th's stead.

***Preservation of error***

Texas Rule of Appellate Procedure 33.1 requires, relevantly, that to preserve error for appeal a party must make a timely, specific request, objection, or motion to the trial court and obtain an express or implied ruling thereon. *See* Tex. R. App. P. 33.1(a)(1), (a)(2)(A). The record establishes that WC 4th objected to Kretzer's authority more than once in the proceedings below. Initially, it filed a motion to vacate the trial court's agreed order granting the joint partial motion to dismiss, including within it a sworn motion to show authority and a motion to vacate Kretzer's actions for lack of standing or capacity. In its motion to vacate, WC 4th argued that Kretzer did not have standing, capacity, or authority to represent it in this litigation and that all of Kretzer's pleadings, filings, and actions taken on its behalf in this case should be struck and vacated, including purportedly "agreed" motions and orders rendered thereon. The trial court conducted a hearing on the motion and, although no express ruling appears in the record, the trial court impliedly denied it. Shortly thereafter, Kretzer and Colorado Third filed their joint motion to sever. In its response to the motion to sever, WC 4th renewed its motion to show authority and objection to Kretzer's authority.

---

order against it and to have its substantive rights adjudicated does not constitute a collateral attack against the receivership order. *See WC 4th & Rio Grande, LP v. La Zona Rio, LLC*, No. 08-22-00073-CV, 2024 WL 1138568, at *12–13 (Tex. App.—El Paso Mar. 15, 2024, no pet. h.) (mem. op.). For the same reasons articulated in that opinion, we reject Colorado Third's collateral-attack argument.

6

At the hearing on the joint motion to sever, WC 4th again argued that Kretzer lacked authority to represent it, settle claims on its behalf, and file joint motions and agreed orders. Nonetheless, the trial court granted the motion to sever, and WC 4th filed a timely motion for new trial in which it, yet again, raised the same arguments about Kretzer's lack of authority. After the trial court denied the motion for new trial, this appeal ensued, in which WC 4th raises the same issues it raised in its repeated objections to Kretzer's authority to act on its behalf and in its motion for new trial. We conclude that WC 4th's issues were properly preserved for our review. *See WC 4th & Rio Grande, LP v. La Zona Rio, LLC*, No. 08-22-00073-CV, 2024 WL 1138568, at \*6–7 (Tex. App.—El Paso Mar. 15, 2024, no pet. h.) (mem. op.) (concluding similarly in lawsuit involving related parties and similar circumstances) (*Rio Grande I*). We thus consider the merits of WC 4th's appellate issues.

### *Kretzer's authority*

WC 4th asserts that the trial court abused its discretion in granting—and in refusing to vacate its orders granting—the Joint Motion to Release Funds, the Joint Partial Motion to Dismiss Certain Claims with Prejudice, and the Joint Motion to Sever. It also argues that the trial court erred in denying its motion for new trial and asserts that it is entitled to reversal of the above orders because Kretzer lacked authority to replace its counsel and to move to dismiss its claims and defenses with prejudice.

We review the trial court's challenged orders for an abuse of discretion. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010) (orders denying motions for new trial); *F.F.P. Op. Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007) (severance orders); *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) (turnover orders);

7

*Mercure Co., N.V. v. Rowland*, 715 S.W.2d 677, 680 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (dismissal orders). The failure to analyze or apply the law correctly is an abuse of discretion, and therefore, "a court may abuse its discretion if its legal decision is incorrect." *HouseCanary, Inc. v. Title Source, Inc.*, 622 S.W.3d 254, 259 (Tex. 2021). As explained below, we agree with WC 4th that Kretzer did not meet his burden to prove that he was the duly authorized representative of WC 4th in this litigation and thus could not have filed any pleadings or motions, joint or otherwise, on WC 4th's behalf.

One of our sister courts—the Eighth Court of Appeals—recently decided this very issue against Kretzer involving his similar attempt to act on behalf of a different World Class affiliate—WC 4th and Rio Grande, LP (Rio Grande, LP)—in two separate litigations. *See Rio Grande I*, 2024 WL 1138568 (addressing appeal from order granting joint motion to dismiss first lawsuit that affiliate had filed to prevent foreclosure by defendant); *WC 4th & Rio Grande, LP v. La Zona Rio, LLC*, No. 08-22-00225-CV, 2024 WL 1141075 (Tex. App.—El Paso Mar. 15, 2024, no pet. h.) (mem. op.) (addressing appeal from order granting dismissal of second lawsuit between parties—filed by affiliate to quiet title—on basis of Kretzer's notice of nonsuit) (*Rio Grande II*). In the first of those cases, Rio Grande, LP sued the noteholder on its property seeking to avoid foreclosure, and (as here) Kretzer entered an appearance as Rio Grande, LP's counsel of record (in replacement of its prior counsel), entered a settlement agreement with the noteholder, and filed a joint motion to dismiss the case. *See Rio Grande I*, 2024 WL 1138568, at *3–5. As here, in that case Kretzer contended that his authority to act on behalf of Rio Grande, LP derived from the receivership order rendered in the Princeton Lawsuit. *See id.* at *3. Considering whether the trial court abused its discretion in granting the "joint" motion to dismiss, the Eighth Court of Appeals determined whether the evidence in the record supported

8

Kretzer's authority to act on behalf of Rio Grande, LP and analyzed the limitations of the Texas Turnover Statute. *See id.* at *8–11, 13–16. The court concluded that the trial court abused its discretion in granting the motion to dismiss because (1) the record did not support the implied finding that Kretzer had the authority to act on behalf of Rio Grande, LP and (2) the trial court had not given Rio Grande, LP the opportunity to have its substantive rights adjudicated before allowing Kretzer to enforce the receivership order against it. *See id.* at *17.

Similarly, in an abbreviated opinion in *Rio Grande II*, the Eighth Court concluded that even though Kretzer had provided "more evidence" than in *Rio Grande I* to establish that World Class and Rio Grande, LP "are related" and may even have a "parent-subsidiary relationship," Kretzer had "still not provided any evidence that would have allowed the trial court to conclude that World Class treated Rio Grande, LP or its general partner as alter egos." *See Rio Grande II*, 2024 WL 1141075, at *4. Furthermore, no evidence in the record would have allowed the trial court to disregard the separate business structure of each entity and treat them as one and the same as World Class or to establish that World Class was a member of Rio Grande, LP's general partner (an LLC) such that Kretzer would have been entitled to control Rio Grande, LP's lawsuits by taking over management of the LLC. *Id.* at *14–15.

We are persuaded by the Eighth Court's well-reasoned opinion in *Rio Grande I*. *See Rio Grande I*, 2024 WL 1138568. For the same reasons, and as summarized below, we hold that the trial court abused its discretion in granting the "joint" motions to release funds, to dismiss, and to sever and in denying WC 4th's motion for new trial.

Kretzer based his purported authority to act in WC 4th's stead in this lawsuit on the receivership order rendered in the Princeton Lawsuit, which was issued pursuant to the Texas Turnover Statute. *See* Tex. Civ. Prac. & Rem. Code § 31.002 (providing that judgment creditor

9

is entitled to aid from "a court of appropriate jurisdiction" to reach property of judgment debtor to satisfy judgment, including appointment of receiver, and enumerating receiver's powers). However, the Turnover Statute is limited in at least two respects: (1) it may not be applied by Texas courts to non-judgment debtors, and (2) being merely a "procedural device," it may not be used to determine the "substantive rights" of judgment debtors—not to mention non-judgment debtors—when there is a dispute over ownership of assets that are the subject of collection efforts. *See Rio Grande I*, 2024 WL 1138568, at *8; *see also Elgohary v. Herrera Partners, L.P.*, No. 01-13-00193-CV, 2014 WL 2538556, at *3 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.) ("A turnover order that issues against a non-party for property not subject to the control of the judgment debtor completely bypasses our system of affording due process." (quoting *Ex parte Swate*, 922 S.W.2d 122, 125 (Tex. 1996) (Gonzales, J., concurring))). Similarly, a turnover order may be enforced against a non-party to the judgment *only* by bringing a separate suit alleging a basis for enforcing the judgment against that party. *In re Old Am. Cnty. Mut. Fire Ins.*, No. 13-14-00231-CV, 2014 WL 4795923, at *5 (Tex. App.—Corpus Christi–Edinburg Sept. 25, 2014, orig. proceeding) (mem. op.). We thus consider whether WC 4th was a stranger to the Princeton Lawsuit.

The only two defendants in the Princeton Lawsuit, and the only two named parties in the receivership order, were World Class and Great Value Storage. Although Colorado Third seeks to treat World Class and its affiliated entities formed by Paul, including WC 4th, as one and the same, the only evidence in the record demonstrates otherwise. WC 4th's motion to vacate was verified by Paul and included the unequivocal statement, "WC 4th . . . is not owned by [World Class], and is not managed or controlled by a general partner or member owned by [World Class]." The evidence attached to Kretzer and Colorado Third's joint motion to dismiss

10

did not controvert this statement. Their evidence included the formation document for WC 4th demonstrating that it was formed as a limited partnership in accordance with the Texas Business Organizations Code. But it is well established that a business entity, such as a partnership, is a distinct legal entity, apart from its partners and members. *See Rio Grande I*, 2024 WL 1138568, at *10 (citations omitted). Similarly, the evidence demonstrated that WC 4th's general partner, WC 4th and Colorado GP, LLC, is a limited liability company, which is also a distinct legal entity, separate and apart from its members, even if there is only one member.[3] *See id.* The evidence therefore reflects that WC 4th is a separate legal entity from World Class, and as such, had the due-process right to have its substantive rights adjudicated in the trial court before Kretzer could be allowed to enforce the receivership order against it. *See id.*

Moreover, the receivership order does not authorize Kretzer to intercede and operate in WC 4th's stead in this lawsuit absent the trial court's first adjudicating WC 4th's substantive rights because the only way that a turnover order may be enforced against a non-party is "by bringing a separate suit alleging a basis for enforcing the judgment against that party." *See id.* at *10 (citing *In re Old Am. Cnty. Mut. Fire*, 2014 WL 4795923, at *5). Although Colorado Third's pleadings below and brief on appeal attempt to treat World Class and its affiliates as one and the same, the only evidence in the record demonstrates otherwise.

Despite the evidence demonstrating that WC 4th is a non-judgment debtor to whom the receivership order does not directly apply, Colorado Third nonetheless argues that World Class "has an ownership interest in" WC 4th, making WC 4th subject to specific provisions of the receivership order. Colorado Third references evidence attached to its and Kretzer's response in opposition to WC 4th's motion to vacate and to show authority. The

---

[3] No evidence in the record identifies the member(s) of WC 4th and Colorado, GP, LLC.

11

evidence includes the underlying loan documents (sworn deed of trust, promissory note, loan modification agreement, and guaranties); the certificates of formation filed with the Secretary of State for the "subsidiaries" of World Class, including WC 4th; and the company agreement for World Class Real Estate, LLC, the manager of WC 4th's general partner. Colorado Third emphasizes the signature lines in the loan documents that appear thusly:

WC 4TH AND COLORADO, LP,
a Texas limited partnership,
      By: WC 4TH AND COLORADO GP, LLC,
          Its General Partner,
             By: WORLD CLASS REAL ESTATE LLC,
                Its Manager,
                By: WORLD CLASS CAPITAL GROUP, LLC,
                    Its Manager

By: ____/s/_____
      Natin Paul, Manager

Those signature lines, however, establish mere *management* of the subsidiary entities by Paul. Management of an LLC is not ownership, and managers need not be members (i.e., owners). *See* Tex. Bus. Orgs. Code §§ 101.101(a), (b) (providing that although LLC must have at least one member, if it has managers, it is not required to have any members during reasonable period between formation and first member's admission), .106(a) (specifying that membership interest in LLC is personal property), .251 (providing that LLC may be governed by either managers or members, depending on provisions in company agreement), .302(d) (providing that manager of LLC is not required to be member); *see also id.* §§ 101.112 ("Member's Membership Interest Subject to Charging Order"), .114 (providing that, except as otherwise provided by company agreement, members and managers are not liable for debts, liabilities, or obligations of LLC including liability under court judgment). Furthermore—and contrary to Colorado Third's

12

assertion—the entity-formation certificates also do not establish that World Class "has an ownership interest in" WC 4th. While the certificates demonstrate the same hierarchy of entities *managing* other entities that the loan-documents signature lines do, they do not demonstrate *ownership* of WC 4th—or of its general partner, WC 4th and Colorado GP, LLC—by World Class.[4]

Having determined that Colorado Third and Kretzer failed to defeat the presumption that WC 4th is a separate and distinct legal entity from World Class (and thus a third party to the Princeton Lawsuit judgment and attendant receivership order), we consider whether any evidentiary support exists for the trial court's implied finding that Kretzer properly exercised his authority in enforcing the receivership order against WC 4th in light of the order's provisions enumerating Kretzer's powers. *See Rio Grande I*, 2024 WL 1138568, at *13. The first provision from which Kretzer's purported authority arose is the one requiring World Class to turn over any "interests" it had in any partnership. We have already determined that the record contains no evidence that World Class had any such interests, but, even if it did, World Class's only "interest" in WC 4th would be limited to its share of the profits and its right to receive distributions. *See id.* (citing *Pajooh v. Royal W. Invs., LLC, Series E*, 518 S.W.3d 557, 562 (Tex. App.—Houston [1st Dist.] 2017, no pet.)). Furthermore, this provision would have, at most, authorized Kretzer to collect on World Class's "interest" in receiving profits or distributions from WC 4th, and the exclusive remedy by which he could have done so would

---

[4] Kretzer and Colorado Third did attach the company agreement for World Class Real Estate, LLC—the manager of WC 4th and Colorado GP, LLC. That agreement demonstrates that World Class is a member (i.e., owner) of World Class Real Estate, LLC. But nothing in the record identifies the member(s) of WC 4th and Colorado GP, LLC. Thus, although World Class may be an owner of World Class Real Estate, LLC—which entity *manages* WC 4th and Colorado, GP, LLC—that ownership interest does not equate to World Class's ownership of downstream entities absent specific proof of such ownership.

13

have been to obtain a charging order, which Kretzer failed to obtain. *See id.* at \*14; *see also* Tex. Bus. Orgs. Code § 153.256(d) ("The entry of a charging order is the exclusive remedy by which a judgment creditor or a partner or of any other owner of a partnership interest may satisfy a judgment out of the judgment debtor's partnership interest."). Accordingly, we conclude that the provision in the receivership order requiring World Class to turn over any interests it had in a partnership did not give Kretzer the right to take possession of the partnership's assets, which he effectively did by taking control of WC 4th's lawsuit. *See Rio Grande I*, 2024 WL 1138568, at \*15.

The second provision in the receivership order on which Colorado Third and Kretzer relied is that which authorized Kretzer to "seize the membership interest of any [LLC] in which [World Class] is a member" and to "sell, manage, and operate the [LLC] as [Kretzer] shall think appropriate." However, we have already determined that no evidence in the record establishes that World Class was in fact a "member" of WC 4th's general partner, WC 4th and Colorado GP, LLC (the LLC). *See id.* Additionally, even if World Class had a membership interest in the LLC, nothing in the record suggests that Kretzer (a) did in fact seize control of World Class's interest in the LLC or sought to operate or manage that entity on World Class's behalf; or (b) had the right, as part of any assumed management duties, to unilaterally terminate this lawsuit on WC 4th's behalf and enter into a settlement agreement. *See id.* at \*16. Given this lack of evidence, the trial court could not have found that Kretzer had the authority under the receivership order to seize control of the LLC. *See id.* "[T]he fallacy in [Colorado Third's] argument lies in its attempts to blur the distinction between the various [World Class] entities and treat them as one and the same as World Class in the absence of evidence to support that position." *Id.* at \*16.

14

The final provision of the receivership order on which Kretzer and Colorado Third relied is that which gives Kretzer the authority to take possession of and sell all "leviable" and "nonexempt" property of World Class, including "causes of action" and "contract rights." But this provision gave Kretzer the authority to take possession of and sell causes of action and contract rights belonging to the "judgment debtor," i.e., World Class. It did not extend his authority to seize such property from any of World Class's subsidiaries or affiliated entities. And, as already noted, we find no evidence—nor any assertion—in the record to support a finding that World Class and its affiliates can be considered one and the same or alter egos of each other. *See id.* Without such evidence, the trial court could not have found that Kretzer had this right. A "judgment creditor (or in this case a receiver) may not simply 'announce its belief' that a judgment debtor and a third party are in essence one and the same without proof of such, and in effect, skip a trial on the merits, and 'declare itself the winner.'" *Id.* (quoting *United Bank Metro v. Plains Overseas Grp., Inc.*, 670 S.W.2d 281, 282–83 (Tex. App.—Houston [1st Dist.] 1983, no writ)). Accordingly, the trial court abused its discretion in granting Colorado Third and Kretzer's "joint" motions to release funds, to dismiss claims between Colorado Third and WC 4th, and to sever those dismissed claims.

## CONCLUSION

Having sustained WC 4th's issues, we reverse the trial court's three challenged orders granting the parties' "joint" motions to (a) release funds, (b) dismiss claims with prejudice, and (c) sever the dismissed claims, and we remand this cause for further proceedings consistent with this opinion.

_____

Thomas J. Baker, Justice

Before Justices Baker, Kelly, and Smith

Reversed and Remanded

Filed:   August 15, 2024