**Ex parte Carlos ROJO.**

No. 96–0389.

Supreme Court of Texas.

July 12, 1996.

Jesus Hernandez, El Paso, for Relator.

Woodrow Wilson Bean, II, El Paso, for Respondent.

PER CURIAM.

In this original habeas corpus proceeding, relator contends that his incarceration for civil contempt is illegal because he is financially unable to pay the child support arrearage required for his release. Because we conclude that relator conclusively established his inability-to-pay defense, we order his discharge.

Carlos Rojo's 1984 divorce decree requires him to pay $300 in monthly child support for his two children. In late 1993, Rojo's ex-wife moved to enforce the child support obligation, contending that Rojo had missed numerous payments. Based on an agreement between the parties, the court issued an en-

forcement order in October 1994 finding that Rojo owed an arrearage of $17,000, and that he was in both criminal and civil contempt of court for failing to make these payments. For the criminal contempt, the court assessed a fine of $500 and sentenced Rojo to 180 days confinement in the county jail. For the civil contempt, the court further ordered that Rojo be confined until he paid the arrearage, plus $2,500 for his ex-wife's attorney's fees. However, the court suspended both the criminal and civil commitment on the condition that Rojo 1) pay $354 per month on the arrearage for 48 months, 2) keep his $300 monthly obligation current, 3) maintain medical insurance for his children, and 4) pay his ex-wife's attorney's fees.

It is undisputed that Rojo did not comply with these conditions. By August 1995, he had paid only $2,874 of the approximately $6,500 in current and back child support due under the October 1994 enforcement order. After a series of three hearings in January, April, and August of 1995, the court revoked its suspension of commitment, ordering Rojo incarcerated. The court's August 21, 1995, commitment order provides:

> IT IS ORDERED that Respondent, CARLOS ROJO, is committed to the custody of the sheriff of El Paso County, Texas, to be confined, as ordered by the order suspending commitment for a period of 180 days or until Respondent has—
>
> 1. paid $17,000 through the El Paso District Clerk's Office, as child-support arrearage; and
> 2. paid $2,500, as attorney's fees to Woodrow W. Bean II, at 1533 Lee Trevino, Suite B, El Paso, Texas 79936.

Because Rojo received 60 days credit for "good conduct", see Tex.Crim. Proc.Code art. 42.032, plus 50 days credit for performing manual labor, see id. art. 43.10, Rojo completed his 180 day criminal sentence on October 27, 1995, after 70 days actual time served. However, when he filed this petition for writ of habeas corpus on April 30, 1996,

he remained in custody pursuant to the civil contempt portion of the commitment order. We ordered his release on bond on May 9, 1996.

Rojo contends that his continued incarceration for civil contempt is illegal because he is financially unable to pay the $19,500 required by the court's commitment order.[1] We agree. At the trial court hearings, Rojo testified that he is self-employed as a cleaner of restaurant kitchen ducts, and that his only source of income is through this business. He presented evidence showing that he earned only $3,300 in 1994 and less than $3,000 in 1993. At the April 1995 hearing, Rojo claimed that he had a total of $84 cash, with no savings accounts, securities or other investments that he could sell to raise money. He further testified that he owned no property other than a 1986 van, which he apparently drove in his work, and a 1976 van worth about $800, which he was willing to sell and apply to his obligation. Rojo also testified that he had unsuccessfully tried to borrow money but that he had no source of credit. His ex-wife did not controvert any of this testimony.

At the August 1995 hearing, Rojo again confirmed that he had no money or property other than his vans. He further testified that he had performed a substantial amount of work for a cafeteria company since the previous hearing, for which he had not been paid due to the company's bankruptcy.

■ A person cannot be incarcerated indefinitely for civil contempt if he or she does not have the ability to perform the condition required for release. See, e.g., Ex parte Dustman, 538 S.W.2d 409, 410 (Tex. 1976); Ex parte Rohleder, 424 S.W.2d 891, 892 (Tex.1967). Civil contempt is coercive, and is based on the notion that the contemnor "'carries the keys of [his] prison in [his] own pocket.'" Ex Parte Werblud, 536 S.W.2d 542, 545 (Tex.1976) (quoting Shillitani v. United States, 384 U.S. 364, 368, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1966)). As we explained in Dustman:

---

1. We note that the commitment order provides that Rojo be incarcerated for 180 days or until he pays the $19,500 arrearage and attorney's fees. While it might be argued that, under this disjunc-

tive wording, Rojo was entitled to release upon completing the 180 day sentence, Rojo does not raise this argument, and we express no opinion thereon.

An order of contempt imposing a coercive restraint is void if the condition for purging the contempt is impossible of performance. [cites omitted]. Unless he has the means by which he may purge himself of the contempt, the relator must be discharged from jail. Otherwise, as stated in *Ex parte DeWees,* the effect of denying the writ of habeas corpus when the relator is unable to purge himself would be to authorize the trial court to confine the relator for the balance of his natural life.

538 S.W.2d at 410. This principle is now codified in the Family Code, which provides that a child support obligor may plead as an affirmative defense to an allegation of contempt that the obligor:

(1) lacked the ability to provide support in the amount ordered;

(2) lacked property that could be sold, mortgaged, or otherwise pledged to raise the funds needed;

(3) attempted unsuccessfully to borrow the funds needed; and

(4) knew of no source from which the money could have been borrowed or legally obtained.

TEX. FAM.CODE § 157.008(c).

■ We conclude that Rojo conclusively established his inability to pay the $19,500 arrearage and attorney's fees. His uncontradicted testimony demonstrates that he has no cash, savings or borrowing power, and that his earnings are very limited. While there is no direct evidence of the value of Rojo's 1986 van, we conclude that, under the circumstances of this case, this does not negate his inability-to-pay defense. The van is ten years old, and Rojo testified in general terms that he could not raise the money to pay the arrearage, which is corroborated by the fact that he has spent over eight months in custody, including six months after completing his criminal contempt sentence. *See Dustman,* 538 S.W.2d at 410 (duration of relator's incarceration is some corroboration of his uncontradicted testimony).

Rojo's ex-wife argues that he should have sought a regular job that would have paid more than the meager sums he was netting with his duct-cleaning business. This factor, while possibly relevant to the criminal contempt sanction, *see Ex parte DeWees,* 146 Tex. 564, 210 S.W.2d 145, 147 (1948), does not bear on the question of whether Rojo had the ability, when the trial court committed him, to purge himself of the civil contempt.

For the foregoing reasons, we direct that relator be discharged from custody.