**Ex parte Todd Grant WOODYARD.**

No. 04–97–00468–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 6, 1997.

John C. Osborne, Houston, for Appellant.

Kenneth Oden, Jr., Oden & Zissa, L.L.P., John Howard Burris, Burris & Burris, Alice, for Appellee.

Before RICKHOFF, DUNCAN and ANGELINI, JJ.

ANGELINI, Justice.

Relator, Todd Grant Woodyard ("Woodyard"), petitions this court for a writ of habeas corpus seeking relief from an order holding Woodyard in contempt of court and ordering him confined. Because we hold that Woodyard was denied due process of law during the course of the contempt proceeding, we order Woodyard discharged.

## PROCEDURAL HISTORY

This habeas proceeding arises out of an action brought by Michelle Reyna Harless ("Harless") against Woodyard seeking enforcement of a child support order. On October 11, 1995, the Honorable Terry A. Canales entered an order in that suit appointing an attorney to represent Woodyard, granting Woodyard additional time to prepare for a hearing on the motion to enforce, and granting Harless a temporary restraining order

that prohibited Woodyard from transferring assets. The order specifically directed Woodyard to deposit the funds from his 401K retirement plan into the registry of the court.[1]

On March 19, 1997, a hearing regarding Woodyard's compliance with the October, 1995 order was held. At the end of that hearing, the court entered a second order addressing various issues. With respect to the 401K fund, the court found that Woodyard did not deposit the 401K proceeds into the court registry as ordered. The court announced that it would review the matter again on April 9, 1997. The order notes that the court did not grant an extension, modify or in any other way alter or amend its previous order regarding depositing the funds into the court registry.

The record contains an affidavit dated April 8, 1997, executed by Woodyard's attorney, stating that while engaged in a conference in chambers, Judge Canales told Woodyard's attorney that "if Mr. Woodyard did not deposit the proceeds of his 401K retirement fund into the registry of the court, he would hold Mr. Woodyard in contempt of court and jail him until the funds were deposited." The hearing to review Woodyard's compliance with the order was rescheduled by agreement to May 21, 1997.

On May 21, 1997, the parties appeared before Judge Canales to address various pending motions. At the end of the hearing, the following transpired:

> THE COURT: Let me recess you-all, and have we got anything else? I'll give you a few minutes to confer [on the next court date]. I've got a couple of other matters I would like to dispose of before 12:00.
>
> MR. ODEN: One other thing, Your Honor. You had ordered him to turn over the 401(k) money into the court registry last time we were here, which was in further-

ance of the Court order you made before, to turn in the money. It's not been done.

> THE COURT: Counsel?
>
> MR. OSBORNE: We filed a motion with you for reconsideration of that order.
>
> THE COURT: Motion is denied. Okay. I've already told you several times. Your client promised to put that money in. I am not going to play games anymore.
>
> Where is the bailiff? I need someone to take this man into custody. He is being held in contempt, and he'll be held in jail until he complies with the Court's order for depositing the 401 and he deposits it into the registry of the Court.
>
> MR. OSBORNE: Your Honor, for the record, the IRS has levied his accounts. There are two levees [sic] outstanding. He has no money in the account. IRS has formally levied on his accounts.
>
> THE COURT: I'll take that up in a while when you've had the opportunity to present it, but this order was made sometime back, and I need to hear evidence on whether or not your client has refused to comply with the Court order to the point where the money has been levied upon.
>
> This has been something that happened a long time ago, which I would assume happened before any levee [sic] occurred, and if your client had been dilatory and caused the levee [sic] on it and deprived the Court of the jurisdiction over those funds, then I have some big difficulties with that. I'll hear it a little bit later this afternoon—Or no, you are going to have to leave. I'll be happy to hear it next week if you want.
>
> MR. OSBORNE: Thank you, Judge.
>
> THE COURT: That's something that's been going on for an extended period of time.

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that TODD GRANT WOODYARD obtain all funds from the 401K retirement plan presently held in the name of TODD GRANT WOODYARD and transmit the same to the District Clerk of the 79th Judicial District Court within five (5) days from the date of this order, to be placed into an interest bearing account under the auspices of this Court.

---

1. With respect to the 401K fund, the order provided as follows:

 It being made known to the Court that a 401K retirement plan was in the possession of respondent, TODD GRANT WOODYARD, a request was made of the Court to order Respondent, TODD GRANT WOODYARD, to deposit the entire 401K funds into the registry of the Court within five (5) days of this order.

A written order of contempt was thereafter signed by Judge Canales on May 22, 1997. The order directed that Woodyard be confined until he "obtain[s] all the funds previously held in a 401K retirement plan in [his] name and deposit[s] the same with the District Clerk of the 79th Judicial District Court, . . . ."

Woodyard subsequently petitioned this court for a writ of habeas corpus. On June 20, 1997, we ordered Woodyard released from jail, upon the posting of a bond, pending a final determination of this matter. No reply was filed by any party in response to our order.

## DISCUSSION

■ In his brief, Woodyard contends that Judge Canales was without jurisdiction to hold him in contempt before a final judgment was entered confirming the amount of child support arrearage owed, if any. We do not reach this substantive issue because we find that Woodyard was deprived of his due process rights in the contempt proceeding.

■ Civil contempt proceedings are considered quasi-criminal in nature, and the contemnor is entitled to procedural due process throughout the proceedings. *Ex parte Brister*, 801 S.W.2d 833, 835 (Tex.1990)(Cook, J., concurring); *Ex parte Johnson*, 654 S.W.2d 415, 420 (Tex.1983). Where the contempt occurs outside the presence of the court, due process requires that the accused have full and complete notification of the subject matter and that he be given an opportunity to be heard. *See Ex parte Swate*, 922 S.W.2d 122, 124 (Tex.1996); *Ex parte Carlile*, 783 S.W.2d 672, 673 (Tex.App.—Houston [14th Dist.] 1989, orig. proceeding); *Jordan v. Middleton*, 762 S.W.2d 339, 341 (Tex.App.—San Antonio 1988, no writ). "A writ of habeas corpus will issue if the commitment order is void because it deprives the relator of liberty without due process of law." *Ex parte Swate*, 922 S.W.2d at 124.

In this proceeding, Woodyard was found to be in constructive contempt for failing to pay his 401K fund into the court's registry. *See Ex parte Carlile*, 783 S.W.2d at 673 (noting failure to pay funds into court's registry constitutes constructive contempt). However, there is no evidence in the record that Wood-

yard received the requisite notification of the accusation of contempt or that he was given an opportunity to be heard.

■ In constructive contempt proceedings, the Texas Supreme Court has held that the contempt judgment must be based on "a valid show cause order or equivalent legal process that contains full and unambiguous notification of the accusation of contempt." *Ex parte Gordon*, 584 S.W.2d 686, 690 (Tex. 1979); *see also Ex parte Edgerly*, 441 S.W.2d 514, 516 (Tex.1969). Oral notification is inadequate, and an order setting a compliance hearing is not a valid substitute. *Ex parte Vetterick*, 744 S.W.2d 598, 599 (Tex.1988); *Ex parte Chunn*, 881 S.W.2d 912, 917 (Tex. App.—Houston [1st Dist.] 1994, orig. proceeding). Furthermore, in order to be given an effective hearing, the accused must be given the opportunity to present evidence concerning any defenses he may have or the accused must knowingly waive that right. *Ex parte Carlile*, 783 S.W.2d at 673; *Ex parte Griffin*, 712 S.W.2d 214, 216 (Tex. App.—San Antonio 1986, writ dism'd), *overruled on other grounds, Ex parte Jimenez*, 737 S.W.2d 358, 361 (Tex.App.—San Antonio 1987, orig. proceeding).

At the May 21, 1997 hearing, Woodyard's attorney alluded to Woodyard's inability to pay the money as directed by the court because the IRS had levied his accounts. Inability to pay might have been a defense available to Woodyard if he was able to meet the burden of proving that defense. *See Ex parte Rojo*, 925 S.W.2d 654 (Tex.1996). Although the trial court appeared to recognize the need to hear evidence on this issue, the statement of facts reflects that no effective hearing was held. In addition, the record does not reflect that proper written notice of the contempt accusation was given. Therefore, we conclude that Woodyard was deprived of his due process rights in the contempt proceeding and is entitled to habeas relief. *See Ex parte Swate*, 922 S.W.2d at 124.

Relator, Todd Grant Woodyard, is ordered discharged from custody.