**In re Darrell L. LAUSCH, Relator.**

No. 01–04–01068–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 3, 2005.

Anthony P. Griffin, Anthony P. Griffin, Inc., Galveston, TX, for Appellant.

Frank A. Hale, Pasadena, TX, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and BLAND.

## OPINION

TIM TAFT, Justice.

Relator, Darrell L. Lausch, requests habeas corpus relief from a September 10, 2004 trial court "Order Affirming Associate Judge's Order Holding Respondent in Contempt For Failure to Pay Child Support, Granting Judgment for Arrearages, and Commitment." Relator asserts that he is illegally restrained under this order because, among other things, his due process rights were violated when the trial court did not follow Texas Family Code statutory procedures in issuing the order. We deny relief.

## Facts

On June 23, 2003, the trial court signed temporary orders (1) making relator the temporary joint managing conservator of the Lausches' son, Joshua, and (2) making real party in interest, Angie Lausch, the temporary joint managing conservator of their other sons, Jacob and Jonah. As child support for Jacob and Jonah, the trial court ordered relator to pay $200 per week, starting June 27, 2003, with a like payment being due on each Friday thereafter until further order of the court. In the order, the trial court enjoined the parties from transferring the property belonging to both or either of them.

On August 19, 2004,[1] the associate judge heard Angie's motion for enforcement of the trial court's June 23, 2003 child support order.[2] After the hearing, from the bench, the associate judge announced that he found relator's child support payments to be $3,765[3] in arrears, and he rendered judgment in that amount, plus $750 in attorney's fees and court costs against relator. The associate judge also stated that he found relator in contempt, sentenced him to 120 days in jail, and ordered that relator remain confined there until the child support arrearage was paid. He informed counsel that he had prepared an associate judge's report to the trial court and asked them to sign it to indicate that they had received his ruling, which they did. The associate judge asked Angie's counsel to submit an order to him by four o'clock that day. Galveston County Sheriff's Office personnel escorted relator to jail after the hearing.

---

1. Page 1 of the reporter's record of the hearing indicates that the hearing was held on August 18, 2004, but the Associate Judge's Report and the docket sheet show that the hearing occurred on August 19, 2004.

2. The trial court (sometimes hereafter referred to as "referring court") referred the motion for enforcement to its associate judge. See TEX. FAM.CODE ANN. § 201.005 (Vernon 2002).

3. The associate judge changed this amount to $3,675 in his Associate Judge's Report.

In the handwritten "Associate Judge's Report," the associate judge found as follows:

> The court finds Respondent is in arrears in the payment of child support in the sum of $3,675. Judgment is rendered in said sum plus attorney's fees of $750 and court costs over and against Respondent Darrell L. Lausch and in favor of Angie M. Lausch, Petitioner.
>
> Respondent is found in contempt and sentenced to 120 days in the Galveston County Jail. Respondent shall remain confined in the Galveston County Jail until the child support arrearage set forth above is paid plus ... $750 in attorney fees....
>
> F. Hale to prepare orders by 8/19/04 @ 4:00 p.m......
>
> [/s/ Stephen Baker]

As requested from the bench by the associate judge, and as directed by the associate judge in his report, Angie's counsel, Frank Hale, prepared an order. The record shows that the trial court, the Honorable Janis Yarbrough, signed the order the next day, August 20, 2004.

The six-page order, entitled, "Order Holding Respondent in Contempt For Failure to Pay Child Support, Granting Judgment for Arrearages, and Commitment," varied from the 11–line body of the Associate Judge's Report in the following respects:

(1) The order set forth the language of the prior child support order sought to be enforced.

(2) It set out 19 separate violations (19 successive weeks, 4/9/04 to 8/13/04) of the child support order, including the date of the violation and amount of money delinquent on that date. It also found each violation to be a separate act of contempt.

(3) It found that, on the 19 dates set out, relator was able to pay the child support amounts due on those dates and that, on the day of the hearing, he was able to pay the amount of child support due.

(4) It contained a section entitled, "Criminal Contempt," in which it assessed 120 days' confinement for each of the 19 violations and ordered that the 19 120–day periods run and be satisfied concurrently.

(5) It contained a section entitled, "Civil Contempt," which ordered that, after relator had satisfied the punitive contempt confinement, he should thereafter be further confined until relator (a) paid Angie $3,675 and (b) paid $750 in attorney's fees to Angie.

On August 23, 2004, the trial court, citing Texas Family Code section 201.013(c),[4] signed an order releasing relator, stating that he had been confined more than 72 hours. In the order, the trial court also set relator's appeal of the findings of the associate judge for September 10, 2004.

On September 10, 2004, the trial court held a hearing regarding relator's appeal of the associate judge's report. At the beginning of the hearing, a discussion of

---

4. An order by an associate judge for the temporary detention or incarceration of a witness or a party shall be presented to the referring court on the day the witness or party is detained or incarcerated. The referring court, without prejudice to the right of appeal provided by Section 201.015, may approve the temporary detention or incarceration or may order the release of a party or witness, with or without bond, pending appeal. If the referring court is not immediately available, the associate judge may order the release of the party or witness, with or without bond, pending appeal or may continue the person's detention or incarceration for not more than 72 hours.

Tex. Fam.Code Ann. § 201.013(c) (Vernon Supp.2004–2005).

the notice of appeal occurred when Angie's attorney moved to dismiss the appeal on the ground that relator had not complied with Texas Family Code section 201.015 in that he had not set out the particular findings and conclusions of the associate judge to which the relator objected. Angie's counsel conceded, however, that relator's notice of appeal did object to the associate judge's failure to make any findings relative to relator's indigency.

In response, relator's counsel stated, "At the time we drew the document up we had never been forwarded a copy of any such [August 20, 2004] order. Only we had the magistrate's handwritten note in terms of the contempt. We did put in the document ... there was no ruling on the question that he was indigent.... [I]n the proceeding below, we argued to the Associate Judge there is no doubt that he has not paid the support, but the question of indigency trumps the question of support."

The trial court ruled that the only issue before it in the appeal was relator's indigency defense, and, without objection from relator, the trial court restricted the hearing to that issue. At the conclusion of the hearing, the trial court announced from the bench,

> This is my ruling. The finding of the Associate Judge is confirmed. I find that respondent did not adequately prove the elements of Section 157.008(b)(1),(2),(3),(4) [regarding indigency] and therefore Respondent is remanded to the custody of the Sheriff of Galveston County in accordance with the order from the hearing date of 8–19–04, all per order to be filed. Mr. Hale, you need to have an order to me by 5:00 o'clock today, a copy of which you need to fax to Mr. Griffin prior to faxing it to me for his review. Deputy, I'm ordering you to take Mr. Lausch into custody at this time.

Relator's counsel then asked the trial court if it could set a bond, pending "appeal," to which the trial court responded:

> Well the order of the Court, if I'm remembering my reading correctly, was that he was to serve 120 days and thereafter he would be released upon the payment of some three thousand some odd dollars. So the order of the Court is that he must serve 120 days prior to release, and then at that point in time I will allow a bond to be made in the amount of thirty-seven hundred dollars.

On September 10, 2004, the trial court signed the "Order Affirming Associate Judge's Order Holding Respondent in Contempt for Failure to Pay Child Support, Granting Judgment for Arrearages, and Commitment." The order stated in part,

> On September 10, 2004, the Court heard DARRELL L. LAUSCH's Notice of Appeal of Associate Judge's Findings With Respect to Granting Judgment For Arrearage and Commitment. **DARRELL L. LAUSCH's** appeal is denied. The associate judge's findings and Order Holding Respondent in Contempt for Failure to Pay Child Support, Granting Judgment for Arrearages and Commitment is affirmed....
>
> . . .
>
> 7. Findings
>
> The Court finds that the findings of the associate judge are affirmed in all parts and respects. Further, the Order Holding DARRELL L. LAUSCH in Contempt for Failure to Pay Child Support, Granting Judgment for Arrearage, and Commitment signed on August 19, 2004, a copy of which is attached hereto as Exhibit "A" and incorporated herein as though fully set out, is in all things approved and affirmed.

The Court further finds that on the hearing of DARRELL L. LAUSCH's Appeal, DARRELL L. LAUSCH failed and did not adequately prove the elements of Section 157.008(c)(1)(2) and/or (3) and/04 [sic] (4) and therefore, the Court ORDERS that DARRELL L. LAUSCH, is immediately remanded to the custody of the Sheriff of Galveston County, Texas in accordance with the Order of this Court dated August 19, 2004, a copy of which is attached hereto as Exhibit "A" and incorporated herein as though fully set out.

Exhibit A attached to the September 10, 2004 order exactly conformed with the order signed by the trial court on August 20, 2004, except that on the last page (a) the line to indicate the date signed was blank; (b) above the line for the presiding judge's signature, someone had drawn a straight line instead of Judge Yarbrough's signature; (c) the line for Frank A. Hale's signature for approval as to form was blank; and (d) the district clerk's file mark showed that the order was filed September 10, 2004, rather than August 20, 2004.

Pursuant to the September 10, 2004 order, the trial court ordered relator incarcerated. He brought this petition for writ of habeas corpus. Conditioned on his posting a suitable bond, we ordered relator released from custody, pending our final determination of his petition for habeas corpus relief.

## Standard of Review

 The purpose of a habeas corpus proceeding is not to determine the ultimate guilt or innocence of the relator, but only to ascertain whether the relator has been unlawfully confined. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex.1979). In a habeas corpus proceeding, the order or judgment challenged is presumed to be valid. *Ex parte Occhipenti*, 796 S.W.2d 805, 809 (Tex.App.-Houston [1st Dist.] 1990, orig. proceeding). A relator bears the burden to show that the contempt order is void and not merely voidable. *In re Pruitt*, 6 S.W.3d 363, 364 (Tex.App.-Beaumont 1999, orig. proceeding). The appellate courts may order the contemnor released only if the judgment is void because of a lack of jurisdiction or because the contemnor was deprived of liberty without due process of law. *In re Houston*, 92 S.W.3d 870, 875, 875–76 (Tex.App.-Houston [14th Dist.] 2002, orig. proceeding). The relator must bring forward an adequate record to establish the invalidity of the order of which he complains. *See* Tex. R.App. P. 52.7(a).

## Variance Between Associate Judge's Report and Trial Court's Subsequent Orders

In issue one, relator asserts that his due process rights have been violated because the "[u]nderlying Associate Judge's order is not what was ordered by the Associate Judge in his [hand]written order/memorandum and is not supportive of the Associate Judge's oral rendition." Under this issue, relator asserts three sub-issues.

In sub-issue (a), relator asserts that his confinement cannot stand without a written order reflecting the actual order by the associate judge and not language modified by an advocate. Under sub-issue (b) relator asserts that a *nunc pro tunc* order is inappropriate. In sub-issue (c), based on his premise that the Associate Judge's Report, rather than Exhibit A, is the operative document relative to his contempt and confinement, relator asserts that the report lacks the requisite specificity regarding his violation of the support order sought to be enforced and that it is inconsistent with Angie's pleadings. Relator also again complains that Exhibit A is unsigned.

■ Turning to sub-issue (a), contrary to the thrust of relator's arguments, the associate judge's oral pronouncements from the bench and his handwritten Associate Judge's Report do not constitute a final order of enforcement. *See Stein v. Stein*, 868 S.W.2d 902, 904 (Tex.App.-Houston [14th Dist.] 1994, no pet.) (holding that under former Texas Government Code section 54.007, predecessor statute to current Texas Family Code section 201.007, setting out the powers of an associate judge, an associate judge does not have the power to render judgment). The Texas Family Code contemplates only two very limited circumstances in which an associate judge may render and sign a final judgment: "one agreed to in writing as to both form and substance by all parties or a final default order." TEX. FAM. CODE ANN. § 201.007(a)(14)(A),(B) (Vernon Supp.2004–2005). The situation in this case fits neither of these categories. Instead, the associate judge's handwritten report constituted findings of fact on the evidence, conclusions of law, and an order of the detention of a party found guilty of contempt, pending approval of the court as provided in section 201.013. *See* TEX. FAM. CODE § 201.007(a)(8),(9),(13) (Vernon Supp. 2004–2005). The associate judge's oral pronouncement from the bench and his handwritten report evidence their interim nature and contemplate an order to follow. The Texas Family Code also contemplates a document beyond the associate judge's report: an order that the associate judge may recommend to the referring court to be rendered in a case. TEX. FAM.CODE ANN. § 201.007(a)(10) (Vernon Supp.2004–2005).

■ From the foregoing, the conclusion is inescapable that the associate judge's August 19, 2004 handwritten report was not a final, immutable order of enforcement. Because Texas Rule of Civil Proce-

dure 316, allowing for the correction of clerical mistakes in the record of any judgment (*nunc pro tunc*) applies only to final judgments,[5] it follows that the referring court's signature on the typed, modified order on August 20, 2004 could not be an improper attempt to modify the associate judge's August 19, 2004 handwritten document under the guise of correcting clerical errors. The record does not disclose the circumstances under which the trial court signed the August 20, 2004 order. In any event, the trial court appears to have signed the order prematurely because, as provided by Texas Family Code section 201.015(a), within three days after relator received notice of the Associate Judge's Report, relator appealed it to the trial court. *See* TEX. FAM.CODE ANN. § 201.015(a) (Vernon 2002). The trial court's signing an order adjudicating the issues considered by the associate judge before the three-day appeal period expired would preclude the right to appeal provided by section 201.015.

■ Relator argues that the referring court is restrained from attaching the unsigned order (Exhibit A to the September 10, 2004 order) under Texas Family Code section 201.013(b), which provides in relevant part: "If an appeal to the referring court is not filed or the right to an appeal to the referring court is waived, the findings and recommendations of the associate judge become the order of the referring court only on the referring court's signing an order conforming to the associate judge's report." TEX. FAM.CODE ANN. § 201.013(b) (Vernon Supp.2004–2005). This statute does not apply to the instant case, however, because relator did file an appeal to the referring court and has not shown that he waived his right to appeal.

5. *See Jenkins v. Jenkins,* 16 S.W.3d 473, 482 (Tex.App.-El Paso 2000, no pet.).

Accordingly, this argument is without merit.

Relator additionally argues that:

The Referring Court herein affirmed the Associate Judge's order, however the affirmance was not the written and/or oral findings but the modified order signed prior to the three day period accorded in which to appeal. . . . In addition, when the referring order was forwarded to the County Jail, it attached the modified order which contained no signature. . . . The Referring Court's order purported to attach the Associate Judge's order; however, this is the furthest thing from the truth. The order, in the best case scenario, is an order signed by the Referring Court within the 72 hour appeal period that does not conform to the Associate Judge's ruling. In the worst case scenario, it is an unsigned order.

However, the September 10, 2004 order was entitled, *"Order Affirming Associate Judge's Order* Holding Respondent in Contempt for Failure to Pay Child Support, Granting Judgment for Arrearages, and Commitment."* (Emphasis added.) In this order, the trial court referred to Exhibit A as the associate judge's order as follows: *"The associate judge's* findings and *Order* Holding Respondent in Contempt for Failure to Pay Child Support, Granting Judgment For Arrearages and Commitment is affirmed." (Emphasis added.) In two other places within the September 10, 2004 order the trial court again referred to Exhibit A, once by its title "Order Holding DARRELL L. LAUSCH in Contempt for Failure to Pay Child Support, Granting Judgment for Ar-

rearage, and Commitment", but, in both instances, referring to the order as having been "signed" or "dated" August 19, 2004:

The Court finds that the findings of the associate judge are affirmed in all parts and respects. Further, the Order Holding DARRELL L. LAUSCH in Contempt for Failure to Pay Child Support, Granting Judgment for Arrearage, and commitment *signed on August 19, 2004,* a copy of which is attached hereto as Exhibit "A" and incorporated herein as though fully set out, is in all things approved and affirmed. . . .

the Court ORDERS that DARRELL L. LAUSCH, is immediately remanded to the custody of the Sheriff of Galveston County, Texas in accordance with the Order of this Court *dated August 19, 2004,* a copy of which is attached hereto as Exhibit 'A' and incorporated herein as though fully set out.

(Emphasis added.). The trial court's reference to Exhibit A is to the order signed erroneously by the trial court on August 20, commemorating the hearing held before the associate judge on August 19.

■ Whatever procedural irregularities are present, these discrepancies are immaterial to the determination of relator's petition because, having afforded relator his appeal of the Associate Judge's Report, the trial court, as the referring court, had the authority to adopt, to modify, or to reject the associate judge's report, including any proposed order. *See Ex parte Skero,* 875 S.W.2d 44, 46 (Tex.App.-Houston [1st Dist.] 1994, orig. proceeding).[6] Having attached Exhibit A to the Septem-

---

**6.** In *Skero,* as in our case, a master found Skero in contempt and sentenced him to a certain number of days' confinement. *Id.* at 45. After the trial court had reheard the contempt because of a question regarding Skero's right to representation, the trial court increased Skero's sentence to 90 days. *Id.*

We held, under Texas Government Code section 54.011, predecessor statute to Texas Family Code section 201.014, that the trial court acted within its statutory discretion in rejecting the master's determination of the amount of incarceration and arriving at its own determination. *Id.* at 46.

ber 10, 2004 order and, in the body of the September 10, 2004 order, having used language that explicitly incorporated Exhibit A by reference, the trial court made Exhibit A part of the operative order. Because the trial court signed the September 10, 2004 order, the fact that the trial court's signature did not appear on Exhibit A is immaterial.

In a footnote, relator complains that the handwritten Associate Judge's Report contained the language "confinement until payment of arrearage," but Exhibit A contained "language of criminal contempt for an uncertain period of time in addition to the arrearages." By this complaint, relator asserts that the handwritten Associate Judge's Report did not provide for criminal contempt confinement, but, rather, provided only for civil contempt confinement. That is, relator "carried the keys to the jail" in his pocket so that, if he paid the child support arrearage and attorney's fees sooner than the expiration of 120 days' confinement, he was entitled to be released on whatever day shy of the 120 days that he paid those items.

In *Ex parte Werblud*, the Supreme Court distinguished civil and punitive contempt as follows:

> A judgment of civil contempt exerts the judicial authority of the court to persuade the contemnor to obey some order of the court where such obedience will benefit an opposing litigant. Imprisonment is conditional upon obedience....

Criminal contempt on the other hand is punitive in nature. The sentence is not conditioned upon some promise of future performance because the cotemnor is being punished for some completed act which affronted the dignity and authority of the court.

*Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex.1976) (citations omitted). Whether one considers the language of the handwritten Associate Judge's Report[7] or the language of Exhibit A,[8] the practical effect is the same. A fair reading of both documents makes it clear that relator is being punished for past contempt by an unconditional confinement of 120 days and that upon the confinement's completion, future confinement, if any, would be of a civil, coercive nature until he fulfilled the prescribed conditions for his release. Relator's complaint concerning the criminal contempt provision of Exhibit A cannot serve as a basis for habeas corpus relief.

In sub-issue (c), based on his premise that the Associate Judge's Report, rather than Exhibit A, was the operative document relative to his contempt and confinement, relator asserts that the report lacked the requisite specificity regarding his violation of the support order sought to be enforced and that it was inconsistent with Angie's pleadings. Relator also again complains that Exhibit A was unsigned. Our analysis above for sub-issues (a) and (b) has already established that the Sep-

---

**7.** "Respondent is found in contempt and sentenced to 120 days in the Galveston County Jail. Respondent shall remain confined in the Galveston County Jail until the child support arrearage set forth above is paid plus ... $750 in attorney's fees."

**8.** 9. Criminal Contempt ...

IT IS TH[E]REFORE ORDERED that DARRELL L. LAUSCH is committed to the county jail of Galveston County, Texas, for a

period of one hundred twenty (120) days for each separate violation enumerated above.

IT IS ORDERED that each period of confinement assessed in this order shall run and be satisfied concurrently.

10. Civil Contempt

IT IS ORDERED that Respondent, DARRELL L. LAUSCH, shall thereafter be further confined in the county jail of Galveston County, Texas until DARREL L. LAUSCH:

1. DARREL L. LAUSCH pays $3,675....

tember 10, 2004 order, including Exhibit A, was the operative document and not the Associate Judge's Report. We have also resolved against relator his complaint regarding the lack of a signature on Exhibit A. Therefore, sub-issue (c) does not provide a basis for habeas corpus relief.

We overrule issue one.

### Impact of the September 10, 2004 Order on Prior Orders

■■■ In issue two, relator asserts that his due process rights were affected when the referring court's affirmance ignored the court's prior orders with respect to real property. Relator presents no argument under this issue. Texas Rule of Appellate Procedure 52.3(h) requires that a petition contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the appendix or record. Tex.R.App. P. 52.3(h). Because relator has failed to meet this requirement with respect to issue two, he has waived this challenge. *In re Kuhler,* 60 S.W.3d 381, 384 (Tex.App.-Amarillo 2001, orig. proceeding).

### Bond Provision Ambiguity

■■■ In issue three, relator asserts that his due process rights were denied because the following language from the September 10, 2004 order is ambiguous: "[A]fter Respondent, DARELL L. LAUSCH, has served 120 days in Galveston County Jail, bond for DARRELL L. LAUSCH is set for purposes of the release from Galveston County Jail in the amount or $3,400.00 which shall be posted by cash only." Relator contends that it is unclear whether he is required to remain confined after the 120 days have passed if he does not post bail. Relator has not shown that he has served the 120 days of punitive contempt confinement. Thus, this argument is not ripe for consideration. *In re Anascavage,*

131 S.W.3d 108, 112 (Tex.App.-San Antonio 2004, orig. proceeding).

Also under this issue, relator again asserts that the September 10, 2004 order should not stand because it relies on the unsigned Exhibit A and that Exhibit A is not reflective of the Associate Judge's Report. Having previously resolved these arguments against relator, we overrule issue three.

### Due Process Impact of Trial Court's Signature on August 20, 2004 Order

■■■ In issue four, relator asserts that his due process rights were denied when the referring court signed the August 20, 2004 order. Specifically, relator argues that the August 20, 2004 order is void.

■■■■ As discussed earlier, the trial court erred in signing the typewritten order on August 20, 2004, before the expiration of relator's statutory three-day period to file an appeal of the associate judge's report. *See Kennedy v. Kennedy,* 125 S.W.3d 14, 17 n. 2 (Tex.App.-Austin 2002, pet. denied) ("Ordinarily, the referring trial court cannot approve and adopt an associate judge's recommended order until after it hears a party's appeal ....") (citing *Santikos v. Santikos,* 920 S.W.2d 731, 734 (Tex.App.-Houston [1st Dist.] 1996, writ denied)). Although the trial court erroneously signed the order on August 20, 2004 and adopted it before the hearing on relator's appeal, the trial court's doing so did not render the order void. *See State ex rel. Latty v. Owens,* 907 S.W.2d 484, 485 (Tex.1995) (holding that although district court should have held a hearing on Owens's appeal before signing master's report, its failure to do so did not make order void.). Mere failure to follow proper procedure will not render a judgment void. *Id.*

Here, because the August 20, 2004 order was the product of not following proper procedure, the order was voidable. By granting relator an appeal on the issue of indigency, the only issue that he cared to appeal,[9] the trial court cured any impairment of relator's due process rights. Further, the trial court's use of an undated, unsigned version of the typewritten order that it had mistakenly signed on August 20, 2004, as Exhibit A to the September 10, 2004 order appears to have been a recognition of its earlier error. The trial court's reincarnation and adoption of the order under the proper circumstances—following the appeal hearing—cured the error.

We overrule issue four.

### Inability–to–Comply Defense

■ In issue five, relator asserts that his due process rights were denied when, in light of his asserted indigency, the trial court ordered him confined.

At the September 10, 2004 appeal hearing, relator was the only witness. The trial court specified that it was interested in relator's ability to pay the ordered child support between the period of April 1, 2004 and the date of the hearing. Relator testified that he was injured in August 2003 and attempted to continue to run his business. He was unemployed, however, from April 12, 2004 until July 22, 2004 because of back surgery and had no income with the exception of a check in July. During this time, he was responsible for the care of the oldest child and no longer had the ability to borrow money from anyone.

On cross-examination, relator gave inconsistent testimony about whether in March 2004 he owned $40,000 worth of tools against which he could have borrowed money to make his April 2004 child support payments. After relator had testified that he did not remember telling the associate judge in an earlier hearing that, on July 22, 2004, he had had $396 in the bank and chose not to pay the $200 support payment due the next day, Angie's counsel impeached relator with the transcript from the earlier hearing in which relator had given that testimony.

On cross-examination, relator also testified that he and his wife owned a piece of property, free of encumbrances, on which they had earlier been offered $27,000, and that he had not sought his wife's and the court's consent to relieve the property from the court's injunction on property sales so that he could pay his April or June child support payments.

■ The involuntary inability to comply with an order is a valid defense to criminal contempt. *Ex parte Chambers*, 898 S.W.2d 257, 261 (Tex.1995). The relator bears the burden of proving his inability to comply. *Id.* We do not weigh the evidence, but determine only if there is no evidence to legitimize the relator's confinement. *Id.* Thus, the issue in habeas corpus review is whether the relator has conclusively established that he was involuntarily unable to pay. *Id.* A person cannot be held in contempt for failing to pay child support if he establishes that he (1) lacked the ability to provide support in the amount ordered; (2) lacked property that could be sold, mortgaged, or otherwise pledged to raise the needed funds; (3) attempted unsuccessfully to borrow the needed funds; and (4) knew of no source from which the money could be borrowed

---

9. In initial discussions before the trial court on September 10, 2004, relator's counsel conceded, "there is no doubt that he has not paid the support, but the question of indigency trumps the question of support."

or legally obtained. TEX. FAM.CODE ANN. § 157.008(c)(1)-(4) (Vernon 2002).

Based on the impeachment evidence that, on July 22, 2004, relator had had $396 in the bank and did not make the $200 child support payment that he owed the next day, there was some evidence to support the trial court's conclusion that relator had failed to establish that, on July 23, 2004, he lacked the ability to provide the support ordered. The evidence of the $27,000 lot and that relator had not sought Angie's or the trial court's consent to borrow money against the lot to pay his April and June child support payments is some evidence to support the trial court's conclusion that relator had not established that he lacked property that could be mortgaged to pay his April and June child support payments.

We cannot say that relator has conclusively established his involuntary inability to pay child support payments so as to entitle him to habeas corpus relief. We overrule issue five.

## Conclusion

We deny relator's petition for habeas corpus relief and remand relator to the custody of the Galveston County Sheriff pursuant to the trial court's September 10, 2004 "Order Affirming Associate Judge's Order Holding Respondent in Contempt for Failure to Pay Child Support, Granting Judgment for Arrearages, and Commitment" and the commitment order of this Court. *See* TEX.R.APP. P. 52.8(a).