

NUMBER 13-09-00149-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**EX PARTE JOSE T. CORONADO**

**On Petition for Writ of Habeas Corpus.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela**
**Memorandum Opinion by Justice Vela**

Relator, Jose T. Coronado, filed a petition for a writ of habeas corpus seeking relief from an order finding him in contempt for failing to pay his child support obligations. We deny the petition for writ of habeas corpus.

### I. BACKGROUND

On August 29, 2007, the Child Support Division of the Texas Attorney General's Office filed a "Motion for Enforcement and Suit for Modification of Support Order" through which it sought, inter alia, to hold Coronado in contempt for failing to pay child support. On

November 14, 2007, the trial court held a hearing on this motion, and the following day the trial court signed an "Order Enforcing and Modifying Child Support Obligation," finding Coronado in contempt for failing to pay child support. The court sentenced Coronado to 180 days in jail as punitive contempt for failing to pay four $180 child support payments on grounds that Coronado could have timely paid these amounts in full. Each failure constituted a separate act of contempt. The court assessed 180 days of imprisonment for each act of contempt and ordered the sentences to run concurrently. The order further mandated that Coronado could pay $3,000 in child support arrearages and $556 in court costs, and provided that he should be incarcerated until these amounts were paid. The "Commitment" provision of the order stated that "said commitments [are] to run concurrently." The order commanded Coronado to appear on February 1, 2008 to begin his sentence.

On February 1, 2008, Coronado did not appear as ordered. That same day, the trial court entered a second commitment order. Coronado was arrested pursuant to the second commitment order on August 17, 2008.

On August 21, 2008, the trial court signed a "Conditional Release Order," stating that Coronado had served five days in jail and had paid $1,500 toward his child support arrearage, but the court further found that Coronado had not yet purged his contempt. The court ordered Coronado to appear on November 7, 2008, to serve the remainder of the contempt sentence previously imposed.

On November 7, 2008, Coronado did not appear as ordered. That same day, the trial court issued a third commitment order. Coronado was arrested pursuant to this third commitment order on February 28, 2009. Coronado remains incarcerated at the present

2

time.

This original proceeding ensued. By petition for writ of habeas corpus, Coronado contends that: (1) the trial court's failure to hold a hearing to determine Coronado's present ability to pay child support prior to incarceration violated his due process rights; and (2) he cannot be held in contempt for failing to pay sums of money not referenced in the contempt order. This Court requested and received a response from the Office of the Attorney General of Texas, Child Support Division.

## II. HABEAS CORPUS REVIEW

The purpose of a habeas corpus proceeding is not to determine the ultimate guilt or innocence of the relator, but to ascertain only whether the relator has been unlawfully confined. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding). In a habeas corpus proceeding, the order or judgment challenged is presumed to be valid. *Ex parte Occhipenti*, 796 S.W.2d 805, 809 (Tex. App.–Houston [1st Dist.] 1990, orig. proceeding). The relator must bring forward an adequate record to establish the invalidity of the order of which he complains. See TEX. R. APP. P. 52.3(j), (k), 52.7.

A writ of habeas corpus will issue if the trial court's contempt order is void, either because it is beyond the court's power or because the relator has not been afforded due process. *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005) (orig. proceeding) (per curiam); *see Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex. 1980) (orig. proceeding); *see also Ex parte Swate*, 922 S.W.2d 122, 124 (Tex. 1996) (orig. proceeding). Although the Texas Constitution provides that "no person shall ever be imprisoned for debt," *see* TEX. CONST. art. I, § 18, a person may be confined under a court's contempt powers for failing to pay

3

child support because the obligation to support a child is viewed as a legal duty and not as a debt. *Henry*, 154 S.W.3d at 596; *see* TEX. FAM. CODE ANN. §§ 157.001(b), 157.166-.167 (Vernon 2008).

### III. CONTEMPT

A judgment of contempt may be either civil or criminal. *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex. 1976) (orig. proceeding). The purpose of civil contempt is remedial and coercive. *Id*. A judgment of civil contempt exerts the judicial authority of the court to persuade the contemnor to obey an order of the court when obedience will benefit an opposing litigant. *Id*. "Imprisonment is conditional upon obedience and therefore the civil contemnor 'carries the keys of (the) prison in (his) own pocket.'" *Id.* (quoting *Shillitani v. United States*, 384 U.S. 364, 368 (1966)); *Ex parte Rojo*, 925 S.W.2d 654, 654 (Tex. 1996) (orig. proceeding) (per curiam). When a relator has committed civil contempt, he may procure his release by complying with the provisions of the court's order. *Id.* Criminal contempt, by contrast, is punitive in nature in that the sentence is not conditioned upon a promise of future performance; rather, the contemnor is being punished for a completed act that affronted the dignity and authority of the court. *Werblud*, 536 S.W.2d at 545.

The contempt order before us is both criminal in nature because it imposes confinement for Coronado's past failure to make child support payments, and civil in nature, in that it provides for further confinement until Coronado purges the contempt by paying the arrearage.

Texas law is clear that a petitioner may not be confined for civil contempt unless he or she has the ability, but refuses, to perform the conditions for release. *In re Gawerc*, 165

S.W.3d 314, 315 (Tex. 2005) (orig. proceeding); *Rojo*, 925 S.W.2d at 655; *Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex. 1967) (orig. proceeding). Stated otherwise, a person cannot be incarcerated indefinitely for civil contempt if he or she does not have the ability to perform the condition required for release. *Rojo*, 925 S.W.2d at 654; *see, e.g., Ex parte Dustman*, 538 S.W.2d 409, 410 (Tex. 1976) (orig. proceeding); *Rohleder*, 424 S.W.2d at 892. An order of contempt imposing a coercive restraint is void if the condition for purging the contempt is impossible of performance. *Rojo,* 925 S.W.2d at 655. Similarly, the involuntary inability to comply with an order is a valid defense to criminal contempt. *Ex parte Chambers*, 898 S.W.2d 257, 261 (Tex. 1995) (orig. proceeding); *In re Lausch*, 177 S.W.3d 144, 155 (Tex. App.–Houston [1st Dist.] 2005, orig. proceeding).

The relator bears the burden of proving his inability to comply. *Chambers*, 898 S.W.2d at 261; *Lausch*, 177 S.W.3d at 155. We do not weigh the evidence, but determine only if there is no evidence to legitimize the relator's confinement. *Chambers*, 898 S.W.2d at 261; *Lausch*, 177 S.W.3d at 155. Thus, the issue in habeas corpus review is whether the relator has conclusively established his inability to comply. *Chambers*, 898 S.W.2d at 261; *Lausch*, 177 S.W.3d at 155.

IV.  INABILITY TO PAY

In the instant case, Coronado alleges that he was denied the right to present evidence regarding his inability to pay the child support arrearage referenced in the order of contempt. With regard to civil contempt orders, we examine the obligor's ability to pay as determined at the time of the hearing on contempt. *See Gawerc*, 165 S.W.3d at 315; *Rohleder*, 424 S.W.2d at 892. In this regard, the obligor's past ability to pay is not relevant

to whether the contemnor has the ability to purge himself from civil contempt. *Gawerc*, 165 S.W.3d at 315 (citing *Rojo*, 925 S.W.2d at 656). In contrast to civil contempt, the current inability to pay is no defense to criminal contempt. *Ex parte Robertson*, 880 S.W.2d 803, 803 (Tex. App.–Houston [1st Dist.] 1994, orig. proceeding). As a defense to criminal contempt, the person ordered to pay must show inability to pay at the time each time payment accrued. *Ex parte Ramon*, 821 S.W.2d 711, 713 (Tex. App.–San Antonio 1991, orig. proceeding). "If he fails to carry that burden as to even one delinquent payment, the criminal contempt judgment is not void." *Id.*

The foregoing principles are codified in the Texas Family Code, which provides that a child support obligor may plead as an affirmative defense to an allegation of contempt that the obligor:

(1)     lacked the ability to provide support in the amount ordered;

(2)     lacked property that could be sold, mortgaged, or otherwise pledged to raise the funds needed;

(3)     attempted unsuccessfully to borrow the funds needed; and

(4)     knew of no source from which the money could have been borrowed or legally obtained.

TEX. FAM. CODE ANN. § 157.008(c) (Vernon 2008). A contemnor is not entitled to habeas relief based on this statute unless he conclusively established all four elements in the trial court. *See Rojo*, 925 S.W.2d at 656; *In re Hammond*, 155 S.W.3d 222, 228 (Tex. App.–El Paso 2004, orig. proceeding); *Ex parte Hightower*, 877 S.W.2d 17, 20 (Tex. App.–Dallas 1994, orig. proceeding).

The "issue of the existence of an affirmative defense to a motion for enforcement

6

does not arise unless evidence is admitted supporting the defense." TEX. FAM. CODE ANN. § 157.006(a) (Vernon 2008). The affirmative defense must be proven by a preponderance of the evidence. *See id.* § 157.006(b). The testimony adduced at the contempt hearing must be examined to determine if relator has discharged his burden to prove that he could not pay the child support as ordered. *Ramon*, 821 S.W.2d at 713; *Ex parte Papageorgiou*, 685 S.W.2d 776, 778 (Tex. App.–Houston [1st Dist.] 1985, orig. proceeding).

It is clear that a child support obligor is entitled to a hearing when charged with constructive contempt based on the failure to pay child support obligations. *In re Zandi*, 270 S.W.3d 76, 77 (Tex. 2008) (orig. proceeding) (per curiam); *see Chambers*, 898 S.W.2d at 259 (noting that the failure to pay child support constitutes constructive rather than direct contempt); *Ex parte Daniels*, 722 S.W.2d 707, 708-09 (Tex. Crim. App. 1987) (orig. proceeding) (holding that constructive contempt requires testimony or documentary evidence to establish the contemptuous conduct); *Ex parte Woodyard*, 952 S.W.2d 104, 107 (Tex. App.–San Antonio 1997, orig. proceeding) (noting that the relator was unable to prove inability to pay without a hearing); *see also Ex parte Hiester*, 572 S.W.2d 300, 302 (Tex. 1978); *In re Bryce*, 981 S.W.2d 887, 888 (Tex. App.–Houston [1st Dist.] 1998, orig. proceeding). Because the court does not have direct knowledge of the facts surrounding the contempt, due process requirements must be satisfied. *See Woodyard*, 952 S.W.2d at 107.

## V. RIPENESS

The attorney general contends that Coronado's complaints regarding the civil portion of the contempt order are not ripe for our review. If there is a valid criminal

contempt sentence, a challenge to the validity of the civil portion of the order is premature until the criminal contempt has been served. *In re Parr*, 199 S.W.3d 457, 462 (Tex. App.–Houston [1st Dist.] 2006, orig. proceeding); *In re Anascavage*, 131 S.W.3d 108, 112 (Tex. App.–San Antonio 2004, orig. proceeding); *In re Scariati*, 988 S.W.2d 270, 272 & n.2 (Tex. App.–Amarillo 1998, orig. proceeding); *Ex parte Durham*, 921 S.W.2d 482, 487 (Tex. App.–Corpus Christi 1996, orig. proceeding); *Ex parte Brown*, 875 S.W.2d 756, 761-62 (Tex. App.–Fort Worth 1994, orig. proceeding); *Occhipenti*, 796 S.W.2d at 810.

The rationale for this rule is that the contemnor has the opportunity to avoid spending any additional time in jail by purging the civil, or coercive contempt portion of the order while serving the criminal contempt sentence. *See Durham*, 921 S.W.2d at 488; *Occhipenti*, 796 S.W.2d at 810. In such cases, the likelihood of continued restraint caused by the civil contempt is hypothetical, and courts cannot decide hypothetical issues or render advisory opinions. *Anascavage*, 131 S.W.3d at 112; *Ex parte Hogan*, 916 S.W.2d 82, 87 (Tex. App.–Houston [1st Dist.] 1996, orig. proceeding); *see Ex parte Hughey*, 932 S.W.2d 308, 310-11 (Tex. App.–Tyler 1996, orig. proceeding) (refusing to issue a writ of habeas corpus since the petitioner was not subject to restraint). If the contemnor remains in jail after serving the criminal contempt because he has not purged the civil contempt, another habeas proceeding may be brought at that time where the contemnor may re-urge the issues related to his civil contempt. *See Occhipenti*, 796 S.W.2d at 810; *Brown*, 875 S.W.2d at 761-62; *see also Durham*, 921 S.W.2d at 487.

Thus, if Coronado's criminal contempt sentence is valid, we may not address his allegations regarding civil contempt. Accordingly, we proceed to address his issues as

8

they pertain to the criminal contempt provisions of the trial court's order.

## VI. Analysis

Based on the "Order Enforcing and Modifying Support Obligation," by which the trial court found Coronado in contempt, Coronado appeared at the hearing on the motion to enforce in person and by attorney. The order states that Coronado agreed to the entry of the order. The order further recites that a record of the proceeding was waived by the parties with the consent of the court.[1] The order was signed by both Coronado and his counsel.

The family code clearly places the burden on Coronado to plead and establish his inability to pay as an affirmative defense. *See* TEX. FAM. CODE ANN. § 157.007 (Vernon 2008), *id.* § 157.008. In the instant case, the record before us is devoid of any pleading or motion asserting that Coronado lacked the ability to pay child support. The record is further devoid of any indication that Coronado requested the opportunity to present evidence to the trial court regarding his inability to pay the child support arrearage that was the subject of the contempt order.

In support of his argument, Coronado relies on authority holding that an order finding one in contempt, but suspending punishment on condition of compliance with the order, provides no authority in itself for arrest and confinement, and a subsequent hearing on the alleged breach of the condition and an unconditional commitment are necessary for due process. *See Ex parte Hart*, 520 S.W.2d 952, 953 (Tex. Civ. App–Dallas 1975, orig.

---

[1] *See* TEX. FAM. CODE ANN. § 157.161(a),(b)(1) (Vernon 2008) (providing that a record of the hearing in a motion for enforcement shall be made, but is not required if the parties agree to an order). Without a reporter's record, we will indulge all presumptions in favor of the trial court's findings and the judgment. *See Bryant v. United Shortline, Inc. Assurance Servs., N.A.*, 972 S.W.2d 26, 31 (Tex. 1998); *Univ. of Houston-Clear Lake v. Marsh*, 981 S.W.2d 912, 916 (Tex. App.–Houston [1st Dist.] 1998, no pet.).

9

proceeding); *Ex parte Hodge*, 389 S.W.2d 463 (Tex. 1965) (orig. proceeding); *Ex parte Hardin*, 161 Tex. 567, 568, 344 S.W.2d 152, 153 (1961) (orig. proceeding); *Ex parte Winfree*, 153 Tex. 12, 15, 263 S.W.2d 154, 157 (1953) (orig. proceeding); *Ex parte Sauser*, 554 S.W.2d 239, 241 (Tex. Civ. App.–Dallas 1977, orig. proceeding). The Texas Supreme Court has recently reaffirmed this principle in the context of a motion to revoke suspension of commitment for contempt for failure to pay child support. *Zandi*, 270 S.W.3d at 77-78; *see* TEX. FAM. CODE ANN. § 157.214 (Vernon 2008) (providing that a motion to revoke must be verified and must allege specifically the conduct that constitutes a violation of the terms of community supervision).

We find the case at hand to be distinguishable. Coronado contends that he was "ordered incarcerated on August 17, 2008 without a hearing," and that the writs of commitment were issued without the benefit of further hearings. However, relator was afforded a hearing in November 2007, as referenced above, which resulted in the contempt order at issue. The "Conditional Release Order" did not suspend punishment on condition that Coronado comply with the previous contempt order. Rather, this order provided that Coronado was to be released for a specific period of time with the proviso that he return to serve the remainder of his sentence. Similarly, the commitment orders entered in this cause did not act to suspend Coronado's sentence for the period that he complied with the contempt order. Accordingly, we decline to apply these authorities to the instant case.

The record before this Court contains some evidence suggesting that Coronado may not have had the necessary funds to pay his child support arrearage. The appendix to Coronado's petition for writ of habeas corpus includes affidavits from Coronado's mother, Rosa Coronado, and the mother of Coronado's children, Christina Puentes. The

10

appendix also includes a letter from Puentes to the attorney general's office which states that Puentes was satisfied with the money that she had received from Coronado, that she wanted to dismiss the lawsuit filed on her behalf against him, and that she wanted the orders for his arrest to be withdrawn. By affidavit, Puentes testified that, at a hearing in August 2008,[2] there was no evidence presented which established that Coronado was financially able to pay child support. She testified that Coronado was not working and was looking for a job, but was unable to find one.

Rosa Coronado testified by affidavit regarding Coronado's occasional employment, periods of inability to locate work, and delineated periods in which the children lived with her and her son. At "the hearing," Rosa testified that there was neither evidence presented regarding her son's ability to pay child support, nor was there evidence presented regarding the months that the children had resided with him. She testified that she had borrowed the money that Coronado used to pay the sum of $1,500 toward his past-due child support. Rosa further testified that her son was indigent and that she could not help him financially. Moreover, we note that relator's current incarceration may be considered as some evidence of his inability to pay. *See Ex parte Garrison*, 853 S.W.2d 784, 788 (Tex. App.–Houston [1st Dist.] 1993, orig. proceeding).

Nevertheless, it is clear that the evidence presented in this proceeding fails to meet the standard contemplated by the family code to establish the defense. There is no testimony from Coronado and the proffered evidence from his mother and ex-wife fails to address the requisite elements of a defense based on an inability to pay as provided in the

[2] The record before the Court fails to include a statement of facts regarding any such hearing. We assume that Puentes refers to a hearing related to the conditional release order.

11

family code. *See* TEX. FAM. CODE ANN. § 157.008(c). For instance, there is no evidence that Coronado attempted unsuccessfully to borrow the money and knew of no source from which the money could have been borrowed or otherwise legally obtained. *See id.*

Moreover, the evidence presented herein was not presented to the trial court for its consideration. We note that at least one case has allowed evidence regarding the inability to pay to be submitted with a petition for writ of habeas corpus. *See id.* Other courts have abated the cause to the trial court for a hearing on the alleged inability to comply with the contempt order. *See Ex parte King*, 819 S.W.2d 944, 944 (Tex. App.–Houston [14th Dist.] 1991, orig. proceeding); *Ex parte Barnes*, 730 S.W.2d 46, 47 (Tex. App.–San Antonio 1987, orig. proceeding). Given the fact that inability to pay is an affirmative defense which must be pleaded and proved by the preponderance of the evidence, we do not believe that this defense can be raised for the first time in the appellate court or that abatement is a proper remedy. Accordingly, we overrule this issue without reference to the merits and without prejudice to Coronado's right to re-urge this issue, if such action should be necessary, following appropriate proceedings in the trial court.

## V. SPECIFICITY OF CONTEMPT ORDER

In his second issue, Coronado further contends that he was denied due process because he is being incarcerated based on his failure to pay amounts which are not referenced in the contempt order or writ of commitment. A contempt order requiring the relator to pay a sum of money that includes amounts that could not be the basis for contempt is void and requires that the relator be discharged from confinement. *Henry*, 154 S.W.3d at 594.

12

As evidence for his argument, Coronado points to a letter from the Office of the Attorney General addressed to his counsel:

> I am in receipt of a letter signed by Christina Puentes, on your letter head, instructing the Office of the Attorney General to withdraw the Writ of Commitment, which was ordered at the November 7, 2008 compliance hearing, for Mr. Coronado's failure to appear. I have spoken to Ms. Puentes this day and she also verbally requested withdrawal of the Writ of Commitment.
>
> I explained to Ms. Puentes, as I am explaining to you in this letter, that the Writ of Commitment will not be withdrawn, due to the fact that Mr. Coronado's arrears are mostly assigned to the State of Texas. Specifically, of the $5,887.96 child and medical support arrears currently owed, Ms. Puentes can only release $1,568.80, with the remaining $4,319.16 being owed to the State of Texas. Until all arrears owed to the State of Texas are paid in full, the Writ of Commitment will not be withdrawn. The figures quoted above are subject to change, as current support obligations are continuing in this matter.
>
> I have set a meeting with Ms. Puentes later this week for her to sign an appropriate release of her portion of the arrears.

Coronado's confinement in this matter is directed, circumscribed, and limited by the original contempt order, which provides that he will purge himself of civil contempt if he pays $3,000 in child support arrearages and $556 in court costs, and is not engendered by the aforementioned correspondence from the attorney general's office. In other words, relator has not shown that his confinement is the result of any action or inaction on the part of the attorney general. Accordingly, we overrule this issue.

## VII. CONCLUSION

Since we have sustained the criminal contempt portion of the trial court's order, our consideration of relator's issues as they pertain to the civil contempt portion of the order is premature. Such issues may, however, be re-urged in the event that Coronado has not purged himself of civil contempt on the completion of his confinement for criminal

13

contempt.  *See Scariati*, 988 S.W.2d at 273-74.

As stated herein, the petition for writ of habeas corpus is DENIED.

Rose Vela
Justice

Memorandum Opinion delivered and filed
this 9th day of April, 2009.